MULVILLE, Trustee, *v.* ADAMS and others.

(*Circuit Court, N. D. New York.* March 4, 1884.)

1. FIRE INSURANCE — DESCRIPTION OF PREMISES — RESPONSIBILITY OF THE ASSURED FOR WARRANTIES AND REPRESENTATIONS.

Where, in an application for insurance whereby the assured agrees that the application is a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property, so far as the same are known to him and are material to the risk, it is immaterial whether the statements are regarded as warranty or merely as representations of the truth of the statement, because the applicant only assumes responsibility for their truth so far as the facts are known to him and are material to his risk.

2. SAME — CONDITIONS WORKING FORFEITURE.

Conditions that work a forfeiture are not to be extended by construction. Being put into the policy for the benefit of the insurer, they will be construed most liberally for the assured.

3. SAME — MATERIALITY A QUESTION OF FACT.

The materiality of a representation is a question of fact. The test is the probable effect of the representation upon the judgment of the insurer.

In Equity.

*Wm. W. Badger,* for complainant.

*Wetmore & Jenner,* for defendants.

WALLACE, J. The complainant, as trustee for 21 insurance companies that had issued policies of fire insurance to the defendant Adams, took an assignment of a bond and mortgage executed by Adams to one Dodge, and has filed this bill to foreclose the mortgage and obtain a decree against Adams on the bond. The property of Adams insured by said policies had been burned, and suits had been brought, some by Adams and some by Dodge, against the several companies to recover the loss, when it was arranged between all the parties that Dodge should assign the bond and mortgage to the complainant, and the pending suits should be discontinued. The assignment contained the following clause:

"The said Mulville, in consideration of receiving said assignment and the discontinuance of such actions, agrees to and with the said Dodge that he will within thirty days commence a suit to foreclose the said mortgage, to which suit the said Adams shall be made a party, and a claim made against him for any deficiency, and that if any of the said policies of insurance were valid as to the interest of said Adams therein at the time of the fire, May 15, 1877, that then such of them as were then valid shall be deemed a good and sufficient defense to the extent that such policies may have been valid."

The property insured consisted of "a saw-mill building, a stone boiler-house attached thereto. and a brick chimney standing detached, all known as the Clinton Mills, together with the engines, boilers, machinery, tools, and all fixtures and appurtenances contained in the buildings." The total insurance was $20,500, of which $5,473.50 was upon the buildings and $15,026.50 was upon the personal property and fixtures.

The bill alleges generally that the several insurance policies issued by the companies to Adams were invalid and void on account of misrepresentations, concealment, and breach of warranty on the part of Adams. The specific allegations are that the insurance was made and issued upon a survey and written description of the property, and that by the terms of the policies such survey and description were to be taken and deemed a part of such policy and a warranty on the part of the assured; and that by other conditions of the policies any false representations by the assured of the condition, situation, or occupancy of the property, any omission to make known every fact material to the risk, any overvaluation, or any misrepresentation whatever, either in a written application or otherwise, should render the policies void. The bill further alleges that in the said survey and description of the premises, among other things, the insured represented the premises described in said policies as being disconnected and detached from a building known and described as a lath and shingle mill; and further represented that there was no planer or planing machine on said premises, nor in the said adjoining building; that there was no woodland or woods within one quarter of a mile of said premises; and that there were no other buildings than those set forth in the application within 150 feet of the buildings insured,—all of which representations were false. The bill also alleges that the insured represented and warranted that there was no incumbrance or mortgage on the property insured, whereas there was in fact at the time of the application for insurance a mortgage thereon in favor of one Dodge. By an amendment to the bill it is alleged that by the terms of the several policies it was conditioned that if the property covered by the insurance should be sold, conveyed, or transferred, the policies should become void, and that they did become void because of a conveyance made by Adams to his son after procuring the insurance and before the fire.

The case turns upon the validity of the policies as affected by the misrepresentations and breaches thus set forth. If none of them are invalid because of these misrepresentations and breaches, they were valid at the time of the fire. The bill contains further allegations intended to show that a recovery could not have been had against the insurance companies upon the policies because of breaches of conditions which took place after the loss, such as failure of the assured to comply with the conditions respecting proofs of loss, failure to furnish certified copies of invoices of property destroyed, refusal of the assured to arbitrate, and overvaluation and false swearing in the proofs of loss. These allegations must be deemed irrelevant to the real controversy, because by the agreement under which the complainant acquired the mortgage the only question open to contestation is whether the policies were valid at the time of the fire. If they were then valid, they are a good defense to the mortgage. The language of the agreement does not permit the complainant to contest.

generally the question whether the plaintiffs in the pending suits against the insurance companies were entitled to recover upon the policies.

The validity of the policies has been assailed in the arguments of counsel upon several grounds, which must be disregarded because the allegations of the bill do not present them. No overvaluation is alleged except in the proofs of loss, and no concealment, as distinct from misrepresentation, is alleged. The controversy is therefore narrowed to the specific issues of misrepresentation or breach of warranty as follows: That the insured premises were disconnected from the shingle mill; that there was no planing-machine in the saw-mill or shingle-mill; that there was no woods or woodlands within one quarter of a mile; that there were no other buildings, except those shown in the survey, within 150 feet of the insured premises; that there was no mortgage to Dodge upon the property; and whether there was a breach of condition whereby the policies are void because of the conveyance of Adams to his son.

There were no oral representations made by Adams, or in his behalf, as a basis for the insurance. The policies were obtained through one Moies, an insurance broker employed by Adams. Moies applied to one Woodward, an insurance agent, and produced to him a written application which had been used by Adams several years before for obtaining a policy on the same property from the Imperial Fire Insurance Company. There was a survey or diagram showing the ground plan of the saw-mill, the shingle-mill, and the chimney, annexed to the application. Woodward was agent for four insurance companies—the Farmville, the Humboldt, the Safeguard, and the Royal Canadian. He made a synopsis of the Imperial application, which is spoken of in the proofs as a "digest," annexing to it a copy of the diagram and a description of the property to be insured. This was shown by him to the officers or agents of some of the companies, and the policies issued by these companies were based upon it as the application for insurance. Every policy in suit was obtained upon this "digest," except the policies issued by the companies for which Woodward was agent and those issued by the Merchants Insurance Company, the St. Louis Insurance Company, and the American Central Insurance Company. The policies issued by the Farmville, the Humboldt, the Safeguard, the Royal Canadian, the Merchants, the St. Louis, and the American Central Companies were obtained upon the original or Imperial application.

1. There was no misrepresentation or breach of warranty which avoids the policies issued upon the basis of the "digest." Every representation contained in this application was a warranty by the terms of the policies, but none of the representations were untrue. By this application the assured represented that there was no planing-machine in the saw-mill building and no woodland within a quarter of a mile. Both of these representations were true. He did not represent,

however, that the saw-mill was disconnected from the shingle-mill, or that there were no other buildings within 150 feet of the property to be insured. The diagram purported to give only the ground plan of the buildings shown upon it. The shingle-mill was properly described as an "adjoining building."

2. There was no misrepresentation or breach of warranty which avoids the policies issued upon the basis of the "Imperial survey" except respecting the existence of a mortgage upon the property. This application consisted of a printed blank containing questions to be answered by the applicant, and an instruction to annex a diagram with a full explanation of the buildings to be insured, and of all buildings within 150 feet. The diagram annexed showed a ground plan of the saw-mill, boiler-room, lath and shingle mill, the side track of a railway, and the location of the water which supplied the mill. An important feature of the application consists in an agreement at the end whereby the applicant covenanted that the application was a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property to be insured, "so far as the same were known to him, and were material to the risk." This agreement restricts the effect of the representations contained in the application. Whether they are treated as a warranty of their truth or as representations merely is not material, because, in either view, the applicant only undertook responsibility for the truth of the representations, so far as the facts were known to him and were material to the risk. *Houghton* v. *Manuf'rs' Ins. Co.* 8 Metc. 114. The application and the policies are to be read together, and it is a familiar rule in the interpretation of conditions which work a forfeiture that they are not to be extended by construction, and, being inserted for the benefit of the insurer, they are to be liberally construed in favor of the assured. No effect can be given to the covenant on the part of the applicant at the end of the application, unless it is construed as restricting his undertaking and holding him accountable for the accuracy of his statements, so far only as the facts stated are material to the risk. If every statement and the truth of every answer were to be treated as material, there would be nothing upon which the restriction could operate. In this application the assured represented by his answer to the eighteenth question that there was no planing-machine upon the premises, but the premises to which the question and answer refer are the insured premises, not the adjuncts or adjoining premises. *Northwestern Ins. Co.* v. *Germania Ins. Co.* 40 Wis. 446; *Carlin* v. *Western Assurance Co.* 57 Md. 515. There was therefore no misrepresentation.

If the first subdivision of the answer should be regarded as an answer to the first subdivision of the question, it is not responsive. When a question is not answered it is not to be inferred that there was nothing which required an answer, and in such case if the answer is not responsive or satisfactory the insurer waives a full answer. *Higgins*

v. *Phœnix Ins. Co.* 74 N. Y. 6; *Carson* v. *Jersey City Ins. Co.* 43 N. J. Law, 30; *Com.* v. *Hide & Leather Ins. Co.* 112 Mass. 136. A reference to the original application, however, shows that this subdivision of the answer was intended as a response to the last subdivision of question 17. The answer to the thirty-fourth question is to be regarded as making the diagram an exhibit and description of all buildings within 150 feet of the insured building, and is equivalent, therefore, to a representation that all such buildings were shown upon it. As it did not disclose the existence of certain buildings within that distance, the omission would be fatal to the validity of the policies were it not that the assured only undertook to be responsible for the truth of his representations, so far as the representations were material to the risk. The materiality of a representation is a question of fact; the test is the probable influence of the representation upon the judgment of the insurer. The testimony of the experts here is sufficient to indicate that the existence of buildings not within 100 feet of the insured property would not be deemed to increase the risk. The omission to describe those outside of that distance must, therefore, be held to be immaterial. This application also contained a representation that there was no mortgage or incumbrance upon the property to be insured. This representation was untrue.

3. Under the allegations of the bill, the only breach of warranty or misrepresentation concerning incumbrances or mortgages upon the insured property is such as arises from the existence of a mortgage to Dodge. At the time the application was originally prepared, there was no mortgage on the property, so far as appears by the proofs. While there is no reason to suppose that Adams intended to misrepresent the fact when the policies in suit were obtained, the inadvertent representation must, of course, be given full effect. The only policies issued upon this application were those of the Merchants' Insurance Company, the St. Louis Insurance Company, the American Central Insurance Company, The Farmville Insurance & Banking Company, the Humboldt Insurance Company, the Safeguard Fire Insurance Company, and the Royal Canadian Insurance Company. Woodward, who was the agent of four of these companies, (the Farmville, the Humboldt, the Safeguard, and the Royal Canadian,) knew of the existence of the mortgage to Dodge at the time the policies were issued. The policies issued by these companies are therefore not invalidated by reason of its existence. His knowledge is imputable to them, and no misrepresentation can be predicated of a fact of which the insurers were fully cognizant. Ang. Ins. § 324. This branch of the controversy is thus narrowed to the policies issued by the Merchants' Insurance Company, the St. Louis Insurance Company, and the American Central Insurance Company. The policy issued by the Merchants' Insurance Company may also be excluded because the evidence shows that the secretary of that company knew of the existence of the Dodge mortgage. The loss in that policy was

originally made payable to Dodge as mortgagee. The policies of the St. Louis Insurance Company and the American Central Insurance Company were obtained through Messrs. Monrose & Melville, the agents of those companies, and were issued by them upon the faith of the statements contained in the Imperial application. As to these policies it must be held that the misrepresentation was fatal to the insurance.

4. The only policies as to which a breach of the condition respecting a sale or conveyance of the property covered by the insurance can be alleged are those issued by the Franklin Insurance Company and the German-American Insurance Company, all the others having been made and delivered after the date of the conveyance by Adams to his son. The proofs show that while these policies were in force, and previous to the fire, Adams made and acknowledged a conveyance of the property to his son, and three days afterwards the son made and acknowledged a conveyance back to the father. The first deed was put on record shortly after the fire. Both the parties to the conveyance testify that it was never delivered, and the father testifies that he put it on record to prevent judgments which were about to be entered against him from becoming liens on the property. The theory of the non-delivery of the deed is so inconsistent with the execution and delivery of the reconveyance by the son that it should not be regarded as true. The act of the son in making a conveyance back, and of the father in accepting it, was an authentic declaration by both, made at a time when neither of them had any interest to subserve by a perversion of the facts, that the former had a title to transfer. These policies are therefore held to have become void. It follows that none of the policies are invalid upon the grounds alleged in the bill except those issued by the Franklin Insurance Company, the German-American Insurance Company, the St. Louis Insurance Company, and the American Central Insurance Company. The amount due upon the several policies is not in issue, because the bill does not charge that the loss was less than the insurance. The proofs, however, show that it was equal at least to the total insurance. Neither is there any issue as to the invalidity of Adams' discharge in bankruptcy which is set up in the answer as a defense to any decree against him upon his bond. The validity of the discharge is not put in issue by a replication. Story, Eq. Pl. § 878. It is needless to say that no facts are properly in issue unless charged in the bill; that every fact essential to obtain the relief desired must be alleged; and that no relief can be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence. Id. § 257.

A decree is directed for the complainant, with a reference to a master to ascertain the amount due upon the mortgage. In ascertaining this the master will apply the insurance moneys due upon all the policies, except the four declared void, as a payment upon the mortgage at the date of the assignment to complainant.