## 14873.   STANSALL *v.* COLUMBIAN NATIONAL LIFE INSURANCE COMPANY.

1. The evidence abundantly authorized a finding in favor of the defendant.
2. This court having previously held under the authority indicated in the following statement of facts, that the issue as to fraud alleged to have been perpetrated by the insured in procuring the policy was one of fact to be settled by the jury, it becomes necessary, under the state of the record (which as to the evidence is substantially the same as when the case was previously before this court), to pass upon the special assignments of error.
3. The special assignments of error argued in the briefs of counsel for the plaintiff in error are dealt with in the opinion. The remaining assignment, not argued in the briefs, is without merit.

DECIDED APRIL 19, 1924.

Action on life-insurance policy; from city court of Atlanta— Judge Reid.   June 22, 1923.

Application for certiorari was denied by the Supreme Court.

The controversy arising over this claim has been the subject of litigation for about eleven years.   The case has previously been before this court three times (13 *Ga. App.* 508; 19 *Ga. App.* 247; 27 *Ga. App.* 537), and before the Supreme Court twice (146 *Ga.* 267; 150 *Ga.* 45).   There has been one mistrial.   On the trial reviewed in 27 *Ga. App.* 537 (109 S. E. 297), a verdict was directed in favor of the defendant.   Under the authority of the decision in *Conn. Mutual Life Ins. Co.* v. *Mulkey,* 142 *Ga.* 358 (82 S. E. 1054), the verdict directed in favor of the plaintiff in that (the last preceding) trial was set aside by this court in an opinion in

which it was said: "In a suit by the same plaintiff on another policy of life insurance covering the same risk, where the issue as to fraud was the same, and the evidence on that issue was for the most part identical and in its effect substantially the same, it was held by the Supreme Court that, 'under the evidence introduced, it was for the jury to say whether the representations thus made were material to the risk.'" (27 *Ga. App.* 537 (1).) On the last trial, which is now before this court for review, the evidence for each of the parties was substantially the same, and resulted in a verdict in favor of the defendant. The order of the trial judge overruling the motion for a new trial is as follows: "In my opinion the verdict of the jury is so clearly right under the evidence that I am disposed to regard as harmless any errors that may have been committed, and the motion for new trial is overruled."

In the application for the insurance, dated February 28, 1911, the question was asked, "To what extent do you use—(a) tobacco; (b) wines; (c) spirits; (d) malt liquors; (e) or any stimulant; (f) or any narcotics; state the amount used, and whether daily or nearly every day?" to which the applicant made written and signed answers as follows: "(a) Smoke two or three cigars daily; (b) none; (c) one or two drinks a month; (d) one or two bottles a week; (e) none; (f) none." On the trial of the issue raised by the plea, that these answers, upon which the defendant relied in issuing the policy, were false, fraudulent, and material to the risk, the defendant put upon the stand Dr. J. H. Conway, who testified, that, beginning June, 1904, and for ten years and a half thereafter, he was manager and physician in charge of what was then known as the "Keely Institute," maintained as an institution for the treatment of addictions to narcotics, alcohol, and tobacco, and neurasthenia; that upon the admission of any patient for treatment it was his strict duty to take what was called the "physician's statement," providing a permanent history of the case. He testified that he took such a statement, signed by himself, from W. M. Mulkey, the insured, on May 9, 1911. Using the "physician's statement" as a memorandum to refresh his recollection, he swore in substantially the language of the written statement, indicating by his testimony that he was doing so, that he (Mulkey) "told me that he was here for treatment for alcoholism;

stated he was forty-four years old and was a contractor, and had first used alcoholic liquor thirty years before this, and now he states here that he had used it excessively for two years, and for the past three months has recently been using it in the following form and daily quantity of one quart. He made that statement on May 9th, 1911." A written memorandum or statement signed by Mulky and also this statement signed by Dr. Conway were offered in evidence, whereupon the following colloquy took place: "Mr. Anderson (for plaintiff) : 'I object to so much of the paper or anything written on it as was not signed by Mr. Mulkey.' The Court: 'That is all he offers, as I understand.' Mr. Colquitt (for defendant) : 'I offer the part, as a memorandum of the witness.' The Court: 'I rule that out as documentary evidence. You can use it in the argument to the jury, as to what the witness said.' Mr. Colquitt: 'That is all we want.' The Court: 'I don't admit it as evidence.' Mr. Anderson: 'Do I understand that you do not offer in evidence the part of this paper signed by Mulkey ?' Mr. Colquitt: 'Yes, sir, we offer all of it in evidence. As I understand, the court's ruling is, all of this part signed by Mr. Mulkey goes in as documentary evidence; that the other part goes in to be used as argument, but not as documentary evidence.' Mr. Anderson: 'Not as evidence at all.' The Court: 'I stated I did not admit it as evidence.' Mr. Colquitt: 'We can use it before the jury as argument, as refreshing the doctor's memory ?' " The court certified that "On the trial the only use made of the paper referred to was to refer to it as being a memorandum or copy of what the witness had sworn, just as a transcription from the stenographer's notes could have been used." Movant in substance contends, that, although the judge properly excluded the paper signed by the witness Conway, as documentary evidence, his ruling in permitting counsel to make use of it as a memorandum, in his argument to the jury "as to what the witness said," amounted to prejudicial error, in that the effect of counsel's so doing necessarily amounted to more than making use of a memorandum showing what the witness had just sworn to, and had the actual effect of thus getting the paper itself before the jury as a solemn anterior record.

*Horton Brothers, Anderson, Rountree & Crenshaw,* for plaintiff.
*Colquitt & Conyers,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) Section

5873 of the Civil Code (1910) provides that "a witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he finally speaks from his recollection thus refreshed, or is willing to swear positively from the paper." A witness in giving positive testimony from recollection as thus refreshed may read in the presence of the jury from a memorandum made by him or which at some time he knew to be correct. *Burney* v. *Ball,* 24 *Ga.* 505 (2) ; *Proctor & Gamble Co.* v. *Blakely Oil Co.,* 128 *Ga.* 606 (2) (57 S. E. 879). But where a witness testifies from his recollection as thus refreshed, the paper itself, where not otherwise binding upon the party against whom the witness testifies, is without probative value and is not admissible as documentary evidence, for any purpose. In *Ingram* v. *Hilton & Dodge Lumber Co.,* 108 *Ga.* 194, 195 (3) (33 S. E. 961), the court said : "In one ground of the motion for a new trial it is alleged that the court erred in allowing a written memorandum made by the witness Foster, in reference to a conversation between himself and the plaintiff, to be introduced in evidence. This memorandum was clearly inadmissible for any purpose. It did not purport to have been signed by the plaintiff, and was in no way binding upon him. It might have been proper enough to allow Foster to refer to this paper for the purpose of refreshing his memory, if need be, but it had no value whatever as original evidence." The courts of many foreign jurisdictions and many of the text-book writers seem to have drawn a distinction between cases where the witness finally testifies to a "past" recollection, and where he finally testifies to a "present" recollection. In instances like the first, the rule laid down by Greenleaf on Evidence (16th ed.), vol. 1, p. 542, is as follows : "Since the witness has verified and adopted the record as representing his knowledge on the subject, it becomes a part of his testimony, 'just as if without it the witness had orally repeated the words from memory,' and may therefore be read aloud by him and shown to the jury, or otherwise put in evidence. A few courts speak of the writing as 'not in itself evidence,'—meaning apparently—what cannot be denied—that it has no standing except as verified and adopted by the witness. A few others expressly refuse to allow it to be 'read in evidence,' or 'given in evidence ;' but this must be regarded as erroneous." So too Mr. Chamberlayne, in his work on the Modern

Law of Evidence (vol. 5, § 3508), states the rule as follows: "Should the production of the contemporaneous memoranda fail to refresh the memory of the maker to such an extent as to enable him to testify to the existence of the facts asserted as a matter of present knowledge, it by no means follows that the usefulness of the memorandum is exhausted. On the contrary, the memoranda themselves may be admitted in evidence, as constituting proof of the facts asserted; provided the maker of the memorandum is able to testify, not only that he made it under proper conditions of contemporaneousness and the like, but also that he knows now that at the time he made the memorandum he knew the facts and that the memorandum states them correctly." This rule is itself, however, subject to various qualifications and restrictions, one of which pertains to what is termed the "spontaneity" in the making of the memorandum, another the "regularity" in its making,—that is, whether it was or was not the business or official duty of the witness making the memorandum so to do. Our own courts do not seem to have formulated any rule upon the question just dealt with, and it is unnecessary, in the determination of the present case, for us to undertake to do so. In instances of the second kind,—that is, such as are referred to by the code-section quoted, and where the witness, as in this case, after refreshing his memory, finally speaks from his present recollection, the rule is generally recognized as being otherwise. As to such a case the words of Lord Ellenborough are quoted in the work by Mr. Greenleaf as follows: "It is not the memorandum that is the evidence, but the recollection of the witness." Following this quotation, the rule laid down by that text-book is as follows: "The party whose witness uses it has no right to have it read to or handed to the jury; it is only the opponent who may do this in case he wishes to cast doubt on the reality of the refreshment of memory."

In the case of *Ingram* v. *Hilton & Dodge Lumber Co.*, supra, and in the discussion just referred to, it must be borne clearly in mind that the question was whether the memorandum could be treated as evidence, whether the statements therein contained had probative value as such. When a document is tendered in evidence, if it be "admitted" at all, it is admitted as evidence. The extent of the ruling in the *Ingram* case is only to the effect that it cannot be treated as evidence for any purpose. In the instant case, as

shown by the colloquy set forth in the statement of facts, the defendant objected to the introduction of the memorandum as "evidence." The court repeatedly ruled it out as such. In doing so he stated that counsel could "use it in the argument to the jury as to what the witness had said." While it appears that during the course of the colloquy counsel renewed their objection to its admission "as evidence at all," it does not appear that objection was ever made then or later during the argument to its "use" in the argument to the jury, not as evidence, but as showing what evidence the witness had given. The court certifies that such was the only use made of it. In view of the fact that the writing was not admitted but was distinctly and repeatedly rejected, and in view of a lack of any objection to such a restricted "use" of the excluded writing as was permitted, and in view of the fact that the witness not only testified in substantially the language of the memorandum, but indicated to the jury that he was doing so, we do not think that the restricted use of the excluded memorandum was calculated to prejudice the minds of the jury so unduly as to authorize the setting aside of their verdict.

Had the testimony of the witness not been in substantially literal accord with the statements contained in the memorandum, and had he himself not indicated by his evidence before the jury that such was the case, the reading of its contents to the jury would have presented a very different question. But it might be remarked that, in a case such as that, the paper could not have been used for the purpose for which its use was permitted. It is a fact in the case that the witness, in attempting to narrate a conversation had with the insured about 10 years previously, was able to refresh his recollection by means of a memorandum written and signed by himself at the time the conversation occurred, and which purported to contain the answers then made by the insured. This is a fact or circumstance which the defendant was entitled to have the jury consider in determining the weight and value of the witness's testimony; not that the memorandum itself was admissible in evidence for the defendant for any purpose; not that the writing could be used as evidence for the purpose of proving the statements therein contained, since, in the language of the court in the *Ingram* case, as evidence it was "clearly inadmissible for any purpose." But the record shows that the writing was not

admitted in evidence at all for any purpose whatsoever; and was only permitted to be "used" for a *restricted purpose not objected to,* after its admission as evidence had been repeatedly denied and its lack of probative value expressly adjudicated. The only difference in the effect between counsel's using the memorandum, instead of using a transcript from the stenographic notes, in discussing the witness's testimony in his argument, might have been to indicate to the jury that the witness had sworn in exact accord with the memorandum previously made. This was already an undeniable and undisputed fact, the witness himself having so indicated in his testimony on the stand. Such a disclosure is, however, at last, the very gist of plaintiff's complaint. If the use of the excluded paper did not harm in this way, it could not harm at all. The use of the paper was permitted, and it was actually used during the argument, as a memorandum indicating what the witness had sworn to. Even if objection had been entered to such a restricted use of the excluded writing, it could not have harmed the plaintiff by disclosing a fact which was already known and incapable of dispute.

2. The court charged the jury as follows: "The two questions you are to decide in this case are whether these answers, to which I have called your attention, were false or not, and if false, whether they were material to the risk that the company was asked to assume in issuing the policy. What I mean by material is what effect *would* these answers, if false, have on the company, or its authorities in deciding whether the policy should issue or not. If you believe that these answers are false, and if you believe the contentions of the defendant, and that if the insured, Mulkey, had answered truthfully, if you believe the contentions of the defendant are true on the subject, if you further believe the company *would* have been influenced to decline to issue the policy, then these answers would be material. In other words, what the law means by materiality or whether these questions are material or not is, did they influence and affect, or would they influence and affect the judgment of the authorities of the company in determining whether the policy should issue or not? If you believe they would, then they would be material; if you believe they would not, they would not be material. So that under these instructions it is a question of fact for you to say whether the an-

swers were material or not on the part of the company in considering whether it would issue the policy or not." Exception is taken to certain portions of this extract from the charge, on the theory that the test of the materiality of false representations consists, not in what might have been the effect upon the particular company issuing the policy, but what its effect upon "a prudent company" would be. In other words, the test is not as to what the effect was, but what it should have been.

Plaintiff's counsel cite *Empire Life Insurance Co.* v. *Jones,* 14 *Ga. App.* 647 (2) (82 S. E. 62), and *Life Insurance Co. of Va.* v. *Pate,* 23 *Ga. App.* 232 (2), 234 (97 S. E. 874), in which the following language was used: "A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance." Counsel for defendant in error cite numerous authorities, the language of which sustains the charge as sound, even though it be assumed that the effect of the language was to make the question of materiality turn upon the question whether the defendant company was influenced by the alleged misrepresentation. See *Empire Life Ins. Co.* v. *Jones,* supra (14 *Ga. App.* 647, 656, 659) ; *Mutual Life Ins. Co.* v. *Bolton,* 22 *Ga. App.* 566, 569 (96 S. E. 442) ; Miller v. Maryland Casualty Co., 193 Fed. 343, 350; Mutual Life Ins. Co. v. Hilton, 211 Fed. 31, 34; Mulville v. Adams, 19 Fed. 887 ; Cooley's Brief on the Law of Insurance, vol. 3, p. 1953; 16 Am. & Eng. Enc. L. (2d ed.), 933; May on Insurance (3d ed.), §§ 184, 195; Joyce on Insurance (2d ed.), vol. 3, p. 3057, § 1892. Without going into a discussion of the reasoning of defendant's counsel to the effect that, even were it possible to assume that these portions of the charge were inaccurate within themselves, any such deficiency was cured by other and different portions of the charge, we are of the opinion that in the instant case the court, in defining materiality, as pertaining to any misstatement of the insured, submitted to the jury the question whether in their opinion the alleged misstatements were such as "would" influence and affect the judgment of the governing authorities of the insurance company. Repeatedly he charged in effect that if the jury believed that the misrepresentations (if made) were such as "would" influence them, they were material, and if they were such as would not influence them, they

were immaterial. This gave to the jury the right to say whether they regarded the misrepresentations as being of such a kind and character as reasonably would or should influence an insurer, and did not in any fair sense leave it for them to find that the misrepresentations were material if acted upon by the defendant for some frivolous cause or excuse. The definition of "materiality," as formulated by Judge Wade in the decisions of this court cited by the plaintiff, is admirably framed, but the failure of the trial judge to follow the language there used cannot be treated as reversible error, unless the meaning of the charge as actually given conveys a wrong impression of the law. What was said by this court in *Ætna Life Ins. Co.* v. *Conway,* 11 *Ga. App.* 557, 561, 562 (75 S. E. 915), seems pertinent here: "The company is not bound to issue the policy, and may refuse to do so without giving any reason for its action. The question therefore is, if the applicant had dealt 'in the utmost good faith' and disclosed the nature and extent of his previous illness and disclosed the names of the physicians by whom he had been treated, would he still have been a desirable risk and would the company have accepted him as such? 'In general it may be said that the test, in determining whether questions contained in an application for insurance are material, is whether the knowledge or ignorance of the facts sought to be elicited thereby would materially influence the action of the insurer.' Cooley's Briefs on the Law of Insurance, vol. 3, p. 1953." *Judgment affirmed. Stephens and Bell, JJ., concur.*