59455. BOWERS v. THE STATE.

MCMURRAY, Presiding Judge.
Defendant was indicted, tried, and convicted of the offense of motor vehicle theft. He was sentenced to serve a term of four years and defendant appeals. *Held:*

1. The first enumeration of error contends the trial court erred in allowing an expert witness to answer, before the jury and over objection, a hypothetical question based on presumed facts not proven at the trial. The issue in the case, stated simply, was whether the defendant, a person of "borderline intelligence, not of normal intelligence," realized at the time that the red Ford truck belonging to another was removed from a parking lot at a garage did not belong to his cousin who was present, and that it was, in fact, being stolen, or whether the defendant was under the mistaken impression that the truck in fact belonged to his cousin. Crucial to the determination of this sole issue are the precise events which occurred

before and during the removal of the truck from the parking lot. It is these events which would enable a jury to determine whether the defendant, a person of "borderline intelligence, not of normal intelligence," was involved in the activity other than as a bystander, and that the events leading up to the stealing of the truck would apprise the defendant that the truck did not in fact belong to his cousin.

Several hypothetical questions were asked of the expert who was testifying as to the intelligence tests given the defendant and as to his observations of the defendant. Initially the assistant district attorney framed a hypothetical question to the expert that if the defendant "was around a truck and it was his impression that the person he was with had a key to that truck and it was his truck, would . . . [the defendant] . . . think it was strange when the seal around the vent window was broken off or torn and someone reached inside and opened it even though they were supposed to have a key?" When an objection was raised to this hypothetical question that there was no testimony offered at the trial "that anybody reached inside or broke a window," the assistant district attorney rephrased his question. Whereupon, the following hypothetical question was asked that if the defendant "goes out there with his car and one of the parties that he is with says I've got a key to this car, this is my car, and then that party starts damaging, tearing the stripping around the vent window, would he [the defendant] have the ability to think that that was a little bit odd?" The expert answered, "I don't know that he would not." Objection was then renewed by defense counsel that "I don't believe there has been any such evidence before the court."

Where reliance is made upon circumstantial evidence alone for proof of one of the essential facts assumed in the framing of a hypothetical question, the trier of fact may consider the answer to the question only if it has first determined that the assumed fact has been satisfactorily established. See *Travelers Ins. Co. v. Hutchens,* 106 Ga. App. 631 (127 SE2d 712); *Ralston Purina Co. v. Hagood,* 124 Ga. App. 226, 229 (183 SE2d 492). Paraphrasing the hypothetical question that if the

defendant goes out there "with his car" or in another vehicle and one of the parties that he is with says I've got a key to this car, "this is my car," and then that party starts damaging, that is, "tearing the stripping around the vent window," would the defendant "have the ability to think that that was a little bit odd?" There was, of course, testimony that the defendant had been around the stolen truck and the defendant's cousin had stated that he had a key to the stolen truck and that it was his truck and there was testimony that the rubber stripping around the vent window had been damaged. Would this testimony be sufficient to infer that the cousin had started "damaging, tearing the stripping around the vent window?" Of course, the defendant had not arrived in his own car and did not witness nor observe anyone damaging or tearing the stripping around the vent window of a car by someone claiming "this is my car." There was testimony that the rubber stripping had been torn away on the truck, but there was simply no testimony whatsoever that the cousin had broken into the truck or that the defendant had observed anyone breaking into the truck, that is, by tearing the rubber vent stripping although it was shown that the cousin had stated that the truck was his own, that he had left the truck at this location earlier because the starter was broken and that the cousin had a key to the truck. There had already been testimony that the defendant was unable to "organize and apply knowledge" and "to comprehend the whole situation" and that he would tend to take at face value whatever his friends told him.

The issue before the jury was whether the defendant *knew* the truck was being stolen at the time in question and that he possessed the necessary criminal intent at that particular time. When the additional element (not proven) is added that the defendant had observed the cousin damaging the rubber on the vent window, ostensibly to break into the truck, the hypothetical question becomes subject to the objection made that there was no such evidence before the court. See Code § 38-1710, which requires that the opinions of an expert may be given "on the facts as proved by other witnesses," although he may give his own opinion based on facts

within his knowledge. While there was evidence that the vent window had been damaged, this evidence was totally insufficient to infer therefrom that the defendant's cousin started "damaging, tearing the stripping around the vent window," nor was this fact within the knowledge of this witness. This assumed fact has not been satisfactorily established, and the trial court erred in allowing the expert witness to answer this hypothetical question to the detriment of the defendant. The circumstantial evidence that the stolen vehicle had been in some manner tampered with by someone since the owner had parked the vehicle and when it was returned to him after it had been stolen simply was insufficient to assume that it had been done by the defendant's cousin who was involved in this theft. See *Ellis v. Southern R. Co.,* 89 Ga. App. 407 (1), 411 (79 SE2d 541); *Ga. Power Co. v. Crutchfield,* 125 Ga. App. 488, 489 (3) (188 SE2d 140); *Baldwin v. Walker,* 143 Ga. App. 382 (1) (238 SE2d 695); *Bryant v. State,* 197 Ga. 641, 642 (6), 652 (30 SE2d 259); *Braswell v. Owen of Ga.,* 128 Ga. App. 528, 529 (2) (197 SE2d 541). The trial court erred in allowing the expert witness to answer this hypothetical question.

2. The defense here was based on evidence that the defendant's cousin stated that he owned the truck and that he possessed a key to it; the defendant is of "borderline intelligence, not of normal intelligence" and more susceptible of taking at face value whatever his friends tell him. The issue is whether the defendant realized that the truck was being stolen at that particular time and he was aiding another in stealing it.

Code Ann. § 26-705 (Ga. L. 1968, pp. 1249, 1270; 1969, pp. 857, 859) is as follows: "A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact, which, if true, would have justified the act or omission." The court instructed the jury that the defendant had entered a plea of not guilty; that a person will not be presumed to act with criminal intention but that intent may be shown in many ways, and the jury must find that it existed from the evidence produced before them although it may be inferred from proven circumstances or by acts and conduct. He further

instructed the jury that the mental capacity of the defendant may also be inquired into. He again instructed the jury that the defendant denied he was guilty of the offense charged and his mere presence at the scene of the crime is not alone sufficient to convict, and that if the defendant did not have the mental capacity to distinguish between right and wrong in relation to the act he should not be found guilty of a crime. At no time did the court charge the substance of Code Ann. § 26-705, supra, that if the act constituting the crime was induced by a misapprehension of fact he should not be found guilty of a crime.

There was no written request to charge the exact language of Code Ann. § 26-705, supra, although there was a written request that even where there is direct evidence that the defendant was present at the scene of a crime but no evidence that he participated therein, this is not sufficient to support a verdict of guilty where the circumstances are consistent with his contention that his presence was involuntary and that he was not conscious of the fact that a crime was being committed. But this charge was not given. This charge contains the substance of Code Ann. § 26-705, supra, in that the defendant's contention was that he was present but his presence was involuntary and that he was not conscious of the fact that a crime was being committed. The trial court erred in refusing to give the substance of this charge or in failing to charge the sole defense of the defendant in that his act in being present at the time the vehicle was stolen "was induced by a misapprehension of fact, which, if true, would have justified the act," that is, of being present and not understanding that the vehicle was being stolen. See *Greeson v. State,* 90 Ga. App. 57, 60 (81 SE2d 839); *Bridges v. State,* 123 Ga. App. 157, 159 (1) (179 SE2d 685). Compare *Treadwell v. State,* 129 Ga. App. 573, 574 (4) (200 SE2d 323) and *Nichols v. State,* 133 Ga. App. 717, 718 (3) (213 SE2d 20). However, the last two cases in nowise apply, inasmuch as the facts are entirely different. See *Henderson v. State,* 141 Ga. App. 430 (4) (233 SE2d 505); *McRoy v. State,* 131 Ga. App. 307, 308 (3) (205 SE2d 445). The trial court erred even though the trial court may have fully and adequately charged on lack of intent.

3. Under the facts of this case the trial court did not err in charging the jury that they might accept or reject the testimony of a lay or expert witness as to the sanity of the defendant and rely on the basis or presumption of sanity as set out in the law. Code Ann. § 26-606 (Ga. L. 1968, pp. 1249, 1270), and the evidence authorized this charge. The trial court was authorized to charge on the general statutory law governing the affirmative defense of insanity whether or not the defendant had entered a written plea of insanity. Code Ann. § 26-702 (Ga. L. 1968, pp. 1249, 1270). See *Lewis v. State,* 239 Ga. 732, 733 (4) (238 SE2d 892). The enumerations of error involving the issues of the court's charge with reference to sanity and insanity are not meritorious here. See *Bennett v. State,* 146 Ga. App. 407 (1) (246 SE2d 425); *Durham v. State,* 239 Ga. 697, 698 (1) (238 SE2d 334); *Potts v. State,* 241 Ga. 67, 82 (13) (243 SE2d 510); *Lamb v. State,* 241 Ga. 10, 13 (3) (243 SE2d 59). Moreover, they were more helpful to the defendant than to the state.

4. Prior to trial the trial court had already provided for one examination by an expert who had testified in defendant's behalf at trial. There was no special plea of insanity or incompetency here. Hence, the motion by defense counsel, made during the trial, to require a psychiatric examination of the defendant addressed itself to the sound discretion of the trial court, and we find no abuse of same under the circumstances here. See *Lewis v. State,* 239 Ga. 732 (2), supra; *Chenault v. State,* 234 Ga. 216, 218 (II (1)) (215 SE2d 223); *Beardsley v. State,* 149 Ga. App. 531, 532 (2) (254 SE2d 715).

5. There was no written plea of incompetency to stand trial, nor was there a written plea of insanity or mental incompetency with reference to the commission of any act filed, although the evidence showed his intelligence was "borderline intelligence, not of normal intelligence," and the expert testified that defendant was depressed when interviewed by him, and it "would be impossible [for him to know what he was doing] if he were depressed." However, the expert also testified just before his observation as to "depression" that a person "with his [the defendant's] intelligence, yes, has that capacity to tell the difference between right and wrong." Formerly,

that is, prior to the 1977 amendment to the criminal law as to the insane or mentally incompetent (Ga. L. 1977, pp. 1293, 1302), the defense of insanity at the time of the alleged criminal act was required to be made "under the general plea of not guilty, and if the defense of insanity is satisfactorily proved, it would acquit the defendant of the charge against him. *Long v. State,* 38 Ga. 491, 509; *Danforth v. State,* 75 Ga. 614 (3) (58 Am. R. 480); *Carr. v. State,* 96 Ga. 284 (22 SE 570); *Alford v. State,* 137 Ga. 458 (73 SE 375) . . . Prior to the Act of 1952 (Ga. L. 1952, pp. 205, 206), there was no provision in our law whereby a jury under the general plea of not guilty, and where insanity at the time of the alleged criminal act was satisfactorily proved, might return a verdict finding the accused insane at the time of the commission of the alleged criminal act." *Bailey v. State,* 210 Ga. 52, 53 (77 SE2d 511). In this law (1952, supra) Code § 27-1503 was repealed in its entirety, but the codifiers of the annotated code substituted this statute therefor. The 1952 law was amended in 1972 to strike Section 1 thereof (see Ga. L. 1972, pp. 848, 849). However, in the 1977 law, supra, the legislature added a new code section to be designated as Code § 27-1503 and styled "Plea of insanity or mental incompetency at the time of the crime." This new Code section refers to situations in which a defendant "shall contend that he was insane or mentally incompetent under the law at the time of the act or acts charged against him were committed." It thus appears by the 1977 amendment that the legislature has created two pleas of insanity, that is, Code § 27-1502, "Plea of mental incompetency to stand trial" and Code § 27-1503, "Plea of insanity or mental incompetency at the time of the crime" (as set forth in Acts and Resolutions of the General Assembly of the State of Georgia 1977).

We do not here hold that a general plea of not guilty could not raise a special plea of insanity but only point out that no such special plea was here filed by the defendant. However, as noted above in Division 3, and based upon the above evidence in which the expert testified that this defendant did have the capacity to tell the difference between right and wrong, yet when suffering from a "depression" it would be impossible for him to know what

he was doing, the trial court was authorized to charge on the general statutory law as to sanity and insanity.

After charging the jury that a person cannot be convicted if he was insane at the time of the crime, the court was not required to further instruct the jury as to the form of their verdict if they should find the defendant not guilty by reason of insanity where the defendant had not entered a special plea of insanity. The defendant here, however, did not contend he was insane or was mentally incompetent under the law at the time of the act or acts charged against him were committed and apparently he did not want that optional verdict required by Code Ann. § 27-1503, supra, submitted to the jury. Of course, if the defendant contends that he was insane and the evidence supports this contention, then the court must instruct the jury as to the proper form of their verdict. See Code Ann. § 27-1503, supra. *Baily v. State,* 210 Ga. 52 (1), supra; *Sanford v. State,* 217 Ga. 825 (1) (125 SE2d 478); *Morgan v. State,* 224 Ga. 604, 605 (2) (163 SE2d 690). The evidence submitted was insufficient to create the issue of insanity at the time of the commission of the alleged offense so as to make it mandatory for the trial court to charge the provisions of Code Ann. § 27-1503, supra.

It is quite apparent that the defendant's sole defense was not that he was insane or mentally incompetent under the law at the time the motor vehicle was stolen, but only that he simply did not have the mental capacity to understand that the vehicle was being stolen while he was present at the scene. Under the circumstances, we decline to reverse the judgment based upon the failure of the trial court to instruct the jury as to the form of their verdict should they find the defendant not guilty by reason of insanity.

However, for the reasons stated above, a new trial in this case is necessary.

*Judgment reversed. Smith and Banke, JJ., concur.*

ARGUED FEBRUARY 5, 1980 — DECIDED MARCH 13, 1980.

*John W. Davis, Jr.,* for appellant.

*William M. Campbell, District Attorney, Christopher Townley, Assistant District Attorney,* for appellee.