72093. STONERIDGE PROPERTIES, INC. v. KUPER.
(343 SE2d 424)

BIRDSONG, Presiding Judge.

In September, 1982, plaintiff-appellee, Bonita Kuper attended a party at the home of Dr. Henry Selvey. While she was on the rear sundeck with seven other people, the deck pulled away from the house and plaintiff fell approximately ten to twelve feet to the ground. Her back, legs and feet were hurt, and the following morning when she bent over to get a grapefruit out of the refrigerator, she felt a sharp pain in her left leg. She went to the emergency room of the Windy Hill Hospital and had x-rays taken of her lower back and left leg. She was advised that she should be patient as it would take some time for her internal injuries to heal. She waited but the pain did not subside and she called an orthopedic doctor who had treated her in December 1981, while she was in St. Louis. Ms. Kuper, at that time, was involved in an exchange program, and she was scheduled to go to

Columbia, South America, in December 1981. Just prior to leaving she had a cold, or the flu, and "some muscle aches" in her back. She went to see Dr. Ellsasser, in St. Louis, who gave her prescriptions for a muscle relaxer and a tranquilizer, a chart of exercises, and recommended a lumbosacral corset. Ms. Kuper said that "[i]t wasn't that he said that I had to go get it [the corset]. He thought it . . . may have made me more comfortable on the plane ride" to South America. She had no pain in her leg at that time and the back pain was gone in about three days.

After the fall on the deck in September 1982, Ms. Kuper was referred to a neurologist, Dr. Woodward, who took down her medical history. He said she had either a pinched nerve or a disc problem and mentioned traction or surgery as a possibility and referred her to an orthopedic surgeon who gave her the same diagnosis. Ms. Kuper had just moved to Atlanta, was new in her job, and had to travel a lot. She did not want surgery and obtained the name of an acupuncturist through the medical society. Dr. Chen treated her for back pain from December 1982 through March 1983. He prescribed a back brace, and his acupuncture treatment relieved the pain, but only for short periods of time.

In January 1983, Ms. Kuper became severely ill and was taken to the emergency room of West Paces Ferry Hospital. Her illness was diagnosed as a kidney stone and her doctor recommended an immediate operation to remove the stone and possibly a kidney. Her doctor was of the opinion that the kidney stone may have been dislodged by her fall on Dr. Selvey's deck. Following her release from the hospital, she returned to treatment by Dr. Chen. Because of the continuance of pain, he recommended a neurologist. The neurologist recommended a myelogram and surgery. She refused and had a C.T. scan which showed a bulging disc in her lower back. Ms. Kuper had heard of a treatment for disc problems called "chymopapain" which was performed by some doctors in the U. S. and Canada. "Chymopapain" is a medical procedure in which a long needle is inserted into the bulging disc and chemicals injected to partially dissolve the disc. The disc is then supposed to pull away from the nerve root and ease the pain. Ms. Kuper found a doctor who could perform this procedure and had the operation at Crawford Long Hospital. She described the post-operative period as "excruciatingly painful" in which she was immobilized. The pain was so agonizing she asked that back surgery be performed as soon as possible. Surgery revealed a ruptured disc. Following this operation, she still had pain in her lower back and in the left leg, but it is not as severe as before the operation. Ms. Kuper incurred over $20,000 in medical expenses in the treatment of her illnesses which she alleges were caused by her fall on Dr. Selvey's deck. The jury returned a verdict for the plaintiff in the amount of $88,000.

Stoneridge Properties brings this appeal. *Held*:

1. When plaintiff contacted Dr. Woodward for his diagnosis, she gave him her prior medical history, which included the prior visit to Dr. Ellsasser in St. Louis in December 1981. Defendant introduced in evidence the deposition of Dr. Woodward in which he said that Ms. Kuper related to him that "a year prior to [the present incident] she had had some back problems that had been treated by an orthopedist. I can't remember exactly where it was in this area, but she had actually resolved without any sequelae [after effect of disease or injury] and she was doing quite well up until the time of September of '82 when she had her fall. . . ." Following the visit of the plaintiff, the doctor dictated his notes to his secretary and they were transcribed and placed in Ms. Kuper's medical records. This was his ordinary business procedure. He identified as Exhibit D-1, the transcribed medical history of Ms. Kuper, from his medical records, kept in the regular course of business. Admission was denied and this refusal is enumerated as error.

Defendant argued to the trial court that the medical history of Ms. Kuper was admissible, both as a business record and as a medical record. Plaintiff objected on the basis that the transcribed medical history taken from Ms. Kuper was hearsay and not the best evidence. We do not agree with either party. The transcribed medical history of Ms. Kuper is the *past recollection recorded* of Dr. Woodward. See generally Green, Ga. Law of Evidence 229, § 130. "A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper." OCGA § 24-9-69. In the present case, counsel did not attempt to refresh the recollection of his witness as to what Ms. Kuper had told him concerning her treatment by Dr. Ellsasser, but offered his past recollection recorded of that statement in evidence as an exhibit, both as a "business" and a "medical" record.

First, admission of a business record is restricted to an entry "made as a memorandum or record of any act, transaction, occurrence, or event. . . ." OCGA § 24-3-14 (b). However, even if admissible as a business record, "conclusions, opinions, estimates, impressions and recommendations of a third party, not before the court" are inadmissible. *Hurt v. State*, 239 Ga. 665, 673 (238 SE2d 542); accord *Finch v. Caldwell*, 155 Ga. App. 813, 815 (273 SE2d 216); compare *Bolton v. State*, 253 Ga. 116 (4) (318 SE2d 138). This is particularly true of medical records which contain diagnostic opinions, conclusions, and other statements of third parties not then before the court. *Moody v. State*, 244 Ga. 247, 249 (260 SE2d 11); *Martin v. Baldwin*, 215 Ga. 293 (2c) (110 SE2d 344); *Weksler v. Weksler*, 173 Ga. App. 250 (325 SE2d 874); *Stouffer Corp. v. Henkel*, 170 Ga. App. 383 (2)

(317 SE2d 222); *Hurt,* supra. In the instant case, it was clear from counsel's statements that he was principally concerned with getting in evidence the statement contained in the medical history that "an orthopedist . . . felt she had an abnormal lumbar spine film. . . ." This is a medical opinion of the St. Louis orthopedist, given to Ms. Kuper, who had supposedly related it to Dr. Woodward. Such out-of-court statement of medical opinion, without a foundation, twice repeated through two other declarants who were not before the court, is transcribed past recollection recorded and was inadmissible as a business record.

We are unaware of any basis for admissibility of Dr. Woodward's recorded recollection of a patient's medical history, which contained a medical opinion of a third party, as a "medical record." See OCGA §§ 24-9-40; 31-33-6; and generally Title 31, Chap. 33. We are aware that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence." OCGA § 24-3-4. Hence, medical history statements given by a patient to a doctor are generally admissible. However, such medical record is still subject to the general rule that "[i]f a hospital record contains diagnostic opinions and conclusions, it cannot, upon proper objection, be admitted into evidence unless and until the proper foundation is laid, i.e., the person who entered such diagnostic opinions and conclusions upon the record must qualify as an expert and relate the facts upon which the entry was based." *Dennis v. Adcock,* 138 Ga. App. 425, 428 (226 SE2d 292); accord *Moody v. State,* supra at 249; *Giles v. Taylor,* 166 Ga. App. 563 (1) (305 SE2d 154); *Dunn v. McIntyre,* 146 Ga. App. 362, 363 (246 SE2d 398); *Cassano v. Pilgreen's,* 117 Ga. App. 260 (2) (160 SE2d 439).

Although proper objection for inadmissibility was not made, neither was a proper basis for admissibility made. Here, the trial court excluded the evidence and his ruling was correct. When the trial court's judgment is correct for any reason, we will affirm. *El Diablo v. Conway,* 247 Ga. 159, 161 (274 SE2d 557); *McLean v. McLean,* 242 Ga. 71, 72 (247 SE2d 867); see also *Finch v. Caldwell,* supra at 815.

Even if the transcript showed that Dr. Woodward's past recollection recorded would not refresh his memory, but the record established the foundation that he could "swear positively from the paper" (OCGA § 24-9-69) that the entry was made contemporaneously, and at the time he made the memo he knew the facts and the memorandum states them correctly, the memorandum itself would be admissible (*Elliott v. Ga. Power Co.,* 58 Ga. App. 151, 157-158 (197 SE 914); *Clackum v. State,* 55 Ga. App. 44 (7) (189 SE 397); *Bridges v. Mutual*

*Benefit Health &c. Assoc.*, 49 Ga. App. 552 (2) (176 SE 543); *Stansall v. Columbian Nat. &c. Ins. Co.*, 32 Ga. App. 87, 90-91 (122 SE 733)), but the medical opinion of Dr. Ellsasser would not be admissible. Where the original of the medical record itself is admissible, but diagnostic opinions and conclusions therein are inadmissible (*Moody*, supra; *Hurt*, supra; *Martin*, supra), a fortiori, past recollection recorded by a doctor of a patient's medical history contained in a medical record, which included a diagnostic opinion of another doctor, would be inadmissible.

2. Ms. Kuper's fall from Dr. Selvey's deck took place in September 1982. In January 1983, she was taken ill while out of Atlanta. She thought she was taking the flu because of being nauseous and vomiting. After returning to Atlanta, she was admitted to the emergency room of West Paces Ferry Hospital and subsequently underwent emergency surgery for a kidney stone. Dr. Warner Wood was asked by *defendant's* counsel for the symptoms of a person having a kidney stone. Dr. Wood stated: "Well, if it's up in the kidney and it doesn't move, usually there is no report of pain unless there is also infection associated with the stone. . . . If there is infection associated with the stone, it usually produces pain in the low back on the same side that the stone is on. If the kidney stone dislodges from the kidney and starts down the ureter, then it will cause pain starting in the back and then moving around to the flank and then around the groin area and down the privates as the stone moves down the ureter and into the bladder." Thereafter, *plaintiff's* counsel formed a hypothetical question which assumed the existence of a kidney stone in the kidney on the date Ms. Kuper was on Dr. Selvey's deck, and asked whether such a fall could dislodge the kidney stone and permit it to move into the ureter. Defendant objected on the basis that the hypothetical question was based on a fact not in evidence. Plaintiff's counsel reminded the court that it was defendant's counsel who broached the subject of an existing stone in the kidney which then moved into the ureter. The court then permitted the question to be asked. We find no reversible error.

Generally, an expert is not permitted to answer a hypothetical question based on facts not placed in evidence. *Braswell v. Owen of Ga.*, 128 Ga. App. 528 (1) (197 SE2d 463); OCGA § 24-9-67. Reliance can be made upon circumstantial evidence to establish a basis for framing a hypothetical question. *Bowers v. State*, 153 Ga. App. 894, 895 (267 SE2d 309). The question of whether the circumstances were sufficiently proven to establish the fact contained in the hypothetical question is an issue for the trier of fact. *Travelers Ins. Co. v. Hutchens*, 106 Ga. App. 631, 633 (127 SE2d 712). The question posed was a proper one for expert opinion, and there was sufficient evidence and circumstances in the record to justify the question posed by plaintiff.

*Ralston Purina Co. v. Hagood*, 124 Ga. App. 226, 229 (183 SE2d 492). The only portion of the hypothetical question left open was whether the stone existed at the time of the plaintiff's fall. Such fact could be proven only by circumstantial evidence. Whether it was sufficiently proven was a matter for the jury. Lack of a proper charge on this issue is not enumerated as error. Under the circumstances of this case, where the issue is first raised by the defendant, whether the period of time between September, 1982 and January, 1983 is of such short duration as would permit the inference of the existence of a kidney stone in September is a proper question for the jury, and Georgia law favors admissibility of evidence, no matter how slight its probative value, we find no reversible error.

3. Appellee's motion for damages for a frivolous appeal is denied. *Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED MARCH 21, 1986.

*William S. Goodman, Richard G. Farnsworth*, for appellant.
*Samuel S. Olens, Robert Roy Ezor*, for appellee.