JOSEPH FEDERCELL *v.* W. E. COCKETT, DEFENDANT, AND THOMAS TREADWAY, AUDITOR TERRITORY OF HAWAII, GARNISHEE.

No. 2236.

Submitted January 9, 1936.          Decided June 17, 1936.

Coke, C. J., Banks and Peters, JJ.

OPINION OF THE COURT BY BANKS, J.

In the instant case the jury returned a verdict in favor of the defendant and the plaintiff moved for a new trial on the following ground: "For prejudicial misconduct on the part of W. E. Cockett, defendant herein, during the course of the trial of said cause, in furnishing, at his expense, liquor and meals to members of the jury in the trial of said cause, for the purpose of influencing said jury in arriving at a verdict." After hearing testimony of several witnesses the court below granted the motion and an order was accordingly entered. The case is here on defendant's bill of exceptions.

Fred N. Tollefsen, a witness called by the movant, who was on the regular venire though not a member of the panel that tried the case, testified in substance on direct examination that while in Wailuku, Maui, for the purpose of jury service, which began on January 13, 1934, and ended on February 13, 1934, he lived at the Katsutani Hotel; that he was told by Mrs. K. Katsutani, the proprietress of the hotel, that a man "with a pheasant lei on his hat,"

whom she afterwards pointed out to Tollefsen and who proved to be William Cockett, the defendant in the instant case, had left a standing invitation for the witness and four members of the jury, who sat in the trial of the *Cockett* case, to partake of refreshments, including liquor, at Cockett's expense; and that this invitation was accepted and free drinks and meals continued to be served for a period of two weeks prior to the release of the venire, which occurred on or about February 13, 1934.

It is true that the testimony of Tollefsen was contradicted by that of other witnesses and it is also true that his own testimony was not entirely consistent as to when the free drinks and meals were served, whether before or after the verdict. It was, however, the province of the circuit judge, who was face to face with the witnesses and heard them testify and observed their demeanor, to appraise their testimony, and his reactions are clearly indicated in his statement made at the hearing that "as to the testimony submitted on this motion—this phase of the motion—the court believes the testimony given by Mr. Tollefsen. I also believe that certain other witnesses forgot to tell the truth, the whole truth and nothing but the truth."

It also appears from the testimony of certain witnesses that two days after the verdict the defendant had luncheon and drinks at the Katsutani Hotel with four members of the jury. It is not certain who paid for these refreshments. There is also testimony that on the evening of the same day the defendant's father gave a luau to celebrate his son's victory in the instant case and that the defendant invited two of the jurors to the luau in appreciation of their services. One of the jurors, Reinhardt, was invited and brought to the luau by John Cockett, brother of the defendant and deputy clerk of the circuit court in which the case was tried. Two other jurors attended the luau and participated in the celebration.

Under the foregoing testimony, which the circuit judge believed to be expressive of the truth, his action in setting aside the verdict should not only be affirmed but commended. An occupant of the bench owes no higher duty to the public and to the position which he holds than to keep the administration of the law free from malefic influences that are calculated to thwart its high purpose, which is the accomplishment of justice. Whenever it is satisfactorily proven that a jury has been subjected to improper influences the verdict should not be permitted to stand. To countenance such a verdict would be to encourage unscrupulous parties to pollute the stream of justice at its source and to permit them to reap the fruits of a victory dishonestly won.

In *Lynch* v. *Kleindolph,* 216 N. W. (Ia.) 2, the court, speaking on this subject, said: "The question involved herein is of a more serious character than would appear at first blush. There is probably no more interesting or fascinating question involved in the history of courts than the origin and development of the jury system. It is one of the most vital elements of our system of government. So far as the average citizen is concerned, he is less in touch with the executive and legislative department. When he is confronted with private or public differences, he naturally turns to the court for relief. His faith in the courts must be encouraged. When the time comes that our people lose faith in the courts, our form of government is fast nearing its end. It is meet and proper, therefore, that on questions of this kind the ruling should be such as to support the faith of litigants in our judicial system. That faith can only be sustained by keeping our judicial proceedings not only free from wrong, but free from all suspicion of wrong. In other words, all our court proceedings should be like Caesar's wife, 'above suspicion.' The

question before us is not a question of whether any actual wrong resulted from the association of this defendant with the juror under the circumstances related, but whether it created a condition from which the opposing litigants and the general public might suspect that wrong resulted from this association. It is not a question of whether both the defendant and the juror were high class citizens and would not be guilty of discussing this lawsuit on this trip, but rather a question of whether or not this conduct should be countenanced by the court. The struggle courts have ever made from the early history of the jury system has been to attain such a perfection as that the matter in dispute between the parties should be submitted to a jury of unbiased and unprejudiced minds, and that the jury should determine the matter wholly upon the evidence submitted to them in court, unbiased and uninfluenced by anything they might have heard or seen outside of the actual trial of the case. Many rules and limitations have been put upon jurors to attain this end, and we are of the opinion, under the circumstances related in this case, that the district court should have granted a new trial. It is true that in the granting of a new trial the discretion of the district court is large. He is familiar with the case, the parties connected therewith, and the circumstances surrounding it, yet we feel that this question is so vital and so far reaching in its effect that we ought to place our stamp of disapproval thereon to the end that, for the benefits of litigants at least, a jury's verdict should be above suspicion."

After discussing numerous authorities the court further said (p. 6) : "This line of authorities both of our own state and sister states shows the marked and continuous effort on the part of the courts to free juries from outside influences, not only for any wrong that may come therefrom, but to avoid situations from which suspicion may be

aroused. We deem this a salutary rule and necessary to sustain not only the dignity of the courts, but the respect of litigants and the public at large shall have for the courts. The district court should have sustained this motion for a new trial on this ground."

It is also said in *Ala. Great Southern R. Co.* v. *Brown,* 140 Ga. 792, 795, 796: "We can have no means of knowing whether the entertainment of the juror influenced him in arriving at his verdict. But under the previous rulings of this court, it does not matter whether injury resulted to the plaintiff in error or not. The courts will see to it that the jury are kept free from influences which may tend to bias or prejudice their minds for or against the cause of either party they are empaneled to try. The entertainment of jurors by parties or attorneys interested in the result of the litigation pending the trial can not be too severely condemned. And the custom of entertaining jurors after they are empaneled to try a case, or 'treating' jurors before or after the case is decided, by parties or attorneys in whose favor the verdict is rendered, is reprehensible conduct, and should and will be discountenanced by the courts. The streams of justice must be kept pure, and the jury, which in theory, as well as in fact, is to find the truth of each issue submitted to them, must not be allowed to become corrupted. Jury trial would degenerate into a farce, become a hiss and a byword, and the reproach of all good citizens, if outside influences were allowed to be brought to bear upon jurors tending to influence their verdict. We understand the embarrassment which may occasionally result from parties or attorneys being unable to invite a friend who is on the jury to accept their hospitality; but the courts and their instrumentalities must at all times, and at all hazards, be kept free from possible contaminating influences, to the end that verdicts will speak in reality the truth of each case, and that

the conduct of jurors during the trial may be above suspicion, and they be not led into temptation. From the time of Magna Charta all English-speaking peoples have rejoiced in the declaration that 'No freeman shall be taken or imprisoned, or be disseised of his freehold, or liberties, or free customs, or be outlawed, or exiled, or anyotherwise destroyed; nor will we pass upon him, nor condemn him, but by lawful judgment of his peers, or by the law of the land. We will sell to no man, we will not deny or defer to any man either justice or right.' By this great charter it was solemnly promised that whether justice is demanded from the palaces of the rich or the cottages of the poor, there is a guaranty that right and justice shall be administered without bias or prejudice to either party. It was made known for all time that jurors, like the bandaged eyes of justice, shall neither see nor know either suitor as they hold the scales with an even and impartial hand." (See also 55 A. L. R. 756; 20 R. C. L., § 44, p. 261; 12 Am. & Eng. Ann. Cas. 958.)

All exceptions urged have been considered and found without merit. They are therefore overruled.

*E. Vincent* for plaintiff.

*A. E. Jenkins* for defendant.