# ALABAMA GREAT SOUTHERN RAILROAD CO. *v.* BROWN.

1. On the trial of the case a jury was stricken and the plaintiff had introduced a part of his evidence. The court ordered a recess until the next morning. During the recess, and for the first time, the defendant's counsel learned that one of the jurors was and had been the guest of the local resident attorney for the plaintiff, at his home in the town where the case was being tried. This fact was brought to the attention of the defendant's counsel by the plaintiff's leading counsel; whereupon the counsel with whom the juror was staying brought the matter to the attention of the court, who had the juror informed not to go again to the home of the counsel with whom he was staying, and the juror went elsewhere. Defendant's counsel proposed to plaintiff's counsel that the juror be withdrawn and the trial proceed with eleven jurors; which proposition was declined. On the next morning counsel for defendant brought the foregoing facts to the attention of the court, stating that he was willing for the juror to be withdrawn and for the trial to proceed with eleven jurors. This was again refused by the counsel for the plaintiff. Defendant's counsel then moved that the court declare a mistrial, which motion was overruled. *Held*, that the court erred in not declaring a mistrial.

2. Whether receiving the verdict of the jury after the court had ordered a recess until the next morning, and in the absence of the defendant and its counsel, will require a new trial, is not decided, as the same facts are not likely to occur on the next trial.

3. The general rule is that a non-expert witness must state facts, and not his opinion, and a non-expert witness may give his opinion accompanied by his reasons therefor. It is error for the court to admit an answer of such a witness which states a mere conclusion.

4, 5. The assignments of error dealt with in the fourth and fifth divisions of the opinion are without substantial merit.

NOVEMBER 13, 1913.

Action for damages. Before Judge Fite. Dade superior court. December 26, 1912.

*Maddox, McCamy & Shumate,* for plaintiff in error.

*Foust & Payne,* contra.

HILL, J. Brown sued the Alabama Great Southern Railroad Company for damages for personal injuries to himself and to his team of horses and wagon in which he was riding, alleged to have been caused by the negligent running of its engine and cars. The defendant denied the material allegations of the petition, and averred that if the plaintiff sustained any personal injuries, or loss of any property at the time and place alleged in his declaration, it was brought about by his own fault and carelessness and not by the fault of the defendant. The jury found a verdict in favor of the plaintiff. A new trial being denied, the defendant excepted.

1. After a jury was stricken and the plaintiff had introduced a part of his evidence, the court took a recess until the next morning. During the recess, and for the first time, the defendant's counsel learned that one of the jurors "was and had been the guest of the local resident attorney for plaintiff at the home of said attorney in the town" where the trial was in progress. This fact was brought to the attention of defendant's counsel by plaintiff's leading counsel, who informed defendant's counsel that the juror was the guest of associate counsel for plaintiff. The leading counsel for plaintiff stated to defendant's counsel that he had just learned the fact by hearing the juror say to associate counsel that he was "ready to go home with him." This being brought to the attention of the court by counsel with whom the juror was staying, the court had the juror informed not to go again to the home of counsel, and the juror then went elsewhere. Defendant's counsel proposed to plaintiff's counsel that the juror be withdrawn, and that the trial proceed with eleven jurors. This proposition was refused. On the next morning counsel for the defendant brought the foregoing facts to the attention of the court, stating that he was willing for the juror to be withdrawn and for the trial to proceed with eleven jurors. Plaintiff's counsel refused to accede to this proposition; whereupon defendant's counsel asked the court to declare a mistrial. To the refusal of the court so to do the defendant filed its exceptions pendente lite, and assigns such refusal as error. We think that a mistrial should have been declared under

the facts stated, which are taken almost literally from the exceptions pendente lite. We construe the statement to mean that the juror had been empaneled when the statement was made that he *"was* and *had been* the *guest* of the local resident attorney for the plaintiff." This being true, a mistrial should have been granted as asked for.

In the case of *Foster* v. *Brooks,* 6 *Ga.* 287, 298, Judge Nisbet said: "But to warrant a new trial, it is not necessary to show that the juryman acted corruptly. The law will guard the trial by jury from the chances of being corrupted." In *Walker* v. *Walker,* 11 *Ga.* 203, 206, Judge Warner said: "It is true the affidavit of the juror was produced, in which he states that his verdict was not influenced by the kindness and hospitality of the caveator. But we place our judgment on the principle of the common law, which we consider a safe and salutary rule. When a juror has been empaneled to try a cause, and during the trial, and before he has rendered his verdict, he shall be *entertained,* by either of the parties, at *their expense,* and the verdict be in favor of the party so entertaining the juror, the verdict will be set aside. . . This rule is indispensably necessary to preserve the purity and integrity of jury trials in our courts, and can not be too strictly enforced." In *Springer* v. *State,* 34 *Ga.* 379, where one of the counsel for the prosecution kept free of charge the horses of some of the jurors for a night, Judge Harris said (p. 381) : "The honor of the bar and the perfect purity of a jury alike demand their entire separation, in their personal and social intercourse, whilst trials are progressing. However harmless, in themselves, as was the conduct of our respected brethren in these cases, we feel ourselves called upon, in this and in every case where this separation is not preserved with the utmost care, to evince, in the most decisive manner, our purpose to shut up every avenue through which corruption, or the influence of friendship, could possibly make an approach to the jury box." In *Salter* v. *Duffield,* 42 *Ga.* 64, 80, Chief Justice Lochrane said: "There is nothing in which courts will go farther than in their protection of the jury-box. Here every precaution is necessary for the proper and pure administration of justice. But in the jury-box, if purity and integrity are not preserved, every principle of right and virtue dies. This court has been vigilant in protecting the jury from even the suspicion of injustice." In *Walker* v.

*Hunter,* 17 *Ga.* 364, 414, it was said by Justice Benning: "It is hardly in the power of affidavits wholly to free this affair from suspicion. It is not in the power of affidavits to show that the two jurors were not consciously or unconsciously affected by it." In *Rainy* v. *State,* 100 *Ga.* 82 (27 S. E. 709), it was held: "Where during the trial of a criminal case the jury dispersed, and one of them was entertained at dinner free of charge by an attorney for the State, such conduct on the part of the latter is cause for a new trial, although the counsel for the accused knew of the same before the verdict had been returned. In such case the trial court should not, and this court will not, inquire whether injury resulted to the accused or not, but the verdict, upon principles of sound public policy, will be set aside, to the end that the purity of jury trial may be preserved unimpaired." In *Central Ry. Co.* v. *Hammond,* 109 *Ga.* 383, 384-385 (34 S. E. 594), Justice Lewis said: "In the administration of law there is perhaps nothing that is guarded with more vigilance by the judiciary than the conduct of the jury pending the trial of a litigated case. For the sake of public policy, and for the purpose of maintaining and protecting the purity of the jury-box, and to insure a fair and impartial trial to litigants, it is the policy of the law that each juror should be kept entirely and absolutely free from any influence which might tend to prejudice or bias his mind in favor of either party to the case on trial." See *Smith* v. *Lovejoy,* 62 *Ga.* 372; *Styles* v. *State,* 129 *Ga.* 425, 430 (59 S. E. 249, 12 Ann. Cas. 176). In 2 Thompson on Trials, § 2564, it is said: "Where a juror has been treated, fed, or entertained by the successful party, or his counsel, or at the expense of either, a new trial will, in nearly all cases, be granted. This rule is, by most courts, deemed indispensably necessary to preserve the integrity of juries. It being, as already stated, a rule of public policy, it will be enforced without reference to the question whether or not the verdict was right." See also Thomp. & M. Juries, § 372.

We can have no means of knowing whether the entertainment of the juror influenced him in arriving at his verdict. But under the previous rulings of this court, it does not matter whether injury resulted to the plaintiff in error or not. The courts will see to it that the jury are kept free from influences which may tend to bias or prejudice their minds for or against the cause of either party they are empaneled to try. The entertainment of jurors by parties

or attorneys interested in the result of the litigation pending the trial can not be too severely condemned. And the custom of entertaining jurors after they are empaneled to try a case, or "treating" jurors before or after the case is decided, by parties or attorneys in whose favor the verdict is rendered, is reprehensible conduct, and should and will be discountenanced by the courts. The streams of justice must be kept pure, and the jury, which in theory, as well as in fact, is to find the truth of each issue submitted to them, must not be allowed to become corrupted. Jury trial would degenerate into a farce, become a hiss and a byword, and the reproach of all good citizens, if outside influences were allowed to be brought to bear upon jurors tending to influence their verdict. We understand the embarrassment which may occasionally result from parties or attorneys being unable to invite a friend who is on the jury to accept their hospitality; but the courts and their instrumentalities must at all times, and at all hazards, be kept free from possible contaminating influences, to the end that verdicts will speak in reality the truth of each case, and that the conduct of jurors during the trial may be above suspicion, and they be not led into temptation. From the time of Magna Charta all English-speaking peoples have rejoiced in the declaration that "No freeman shall be taken or imprisoned, or be disseised of his freehold, or liberties, or free customs, or be outlawed, or exiled, or anyotherwise destroyed; nor will we pass upon him, nor condemn him, but by lawful judgment of his peers, or by the law of the land. We will sell to no man, we will not deny or defer to any man either justice or right." By this great charter it was solemnly promised that whether justice is demanded from the palaces of the rich or the cottages of the poor, there is a guaranty that right and justice shall be administered without bias or prejudice to either party. It was made known for all time that jurors, like the bandaged eyes of justice, shall neither see nor know either suitor as they hold the scales with an even and impartial hand. .

2. Error is assigned because the court received the verdict of the jury after the court had ordered a recess until the next morning, and in the absence of movant's counsel, "thus denying movant the privilege of requesting that the jury be polled." Counsel for the movant had left the court-room and was at a hotel a short distance from the court-house when the verdict was received by the court.

We deem it unnecessary to discuss this ground of the motion, as the facts stated therein will not likely occur again on the next trial.

3. Error is assigned because the court permitted a witness for the plaintiff to testify, over objection of the defendant's counsel, as follows: "I think the distance between those two marks would suit the distance between the springs of that seat found there. The width of those springs between was about the right space. If the spring hit him I think that would be about right. What the facts are I don't know. I hardly know how to intelligently answer the question, how the width of the springs compare with the distance of the different marks on his arm and the distance of the springs apart, but I only answer it in this way. I think it could have been made by the spring." It is objected that this evidence should not have been admitted, because the witness should state the facts, and let the jury determine the question as to what caused the injury to the plaintiff's arm, whereas the answer of the witness is a mere conclusion. Undoubtedly the general rule is that a witness should state facts and not his opinion, and a non-expert witness can not give his opinion unless he also gives the fact or facts upon which he bases his opinion. *Potts* v. *House,* 6 *Ga.* 324 (50 Am. D. 329); *Mayor &c. of Milledgeville* v. *Wood,* 114 *Ga.* 370 (2), 372 (40 S. E. 239); *Augusta R. Co.* v. *Dorsey,* 68 *Ga.* 228 (11); and see 5 Mich. Dig. Ga. R. 520 et seq. The witness frankly states that he does not know what the facts are, and that he hardly knows how to answer intelligently the question as to how the width of the springs compares with the different marks on the arm of the plaintiff, and the distance of the springs apart; and his conclusion is, "I think it could have been made by the spring." This answer can be no more than the mere opinion of the witness, without giving any fact as a basis or as a reason therefor. He could state, if he knew, the distance of the springs apart, and also the distance apart of the marks on the arm of the plaintiff, and let the jury say whether the injury was caused by the springs. The jury would be as competent to draw the correct inference from the facts as the witness. The witness was not testifying as an expert. We think the court erred in not rejecting the answer of the witness.

4. Complaint is made of the following charge of the court: "Replying to this, the defendant company says that his injuries, if permanent, are slight, and he can do practically as much work

now as before; the only injury being to his left arm, as the defendant contends." The criticism is that the defendant contended that it did not cause the injury to the plaintiff and was not responsible for it in any view of the evidence, and that the instruction complained of erroneously stated its defense. We do not think this is a good assignment of error. If the court did not set out correctly, or as fully as desired, the contentions of the defendant, a proper request for additional instructions should have been submitted.

5. The 8th and 9th grounds of the amended motion complain of the failure of the court to charge the jury in substance as therein set out. It does not appear that any request was made that the court instruct the jury as the movant insists should have been done, and there is no merit in these assignments of error.

*Judgment reversed. All the Justices concur.*