## 7644. REALTY BOND & MORTGAGE CO. v. HARLEY.

1. The evidence authorized a finding for the plaintiff.
2. The question of amount of damages is for the jury, and the court should not interfere unless there is something in the record or in the amount awarded to indicate that the verdict was the result of prejudice or bias on the part of the jury.
3. The alleged newly discovered evidence is largely cumulative and impeaching, and is not sufficient to warrant the granting of a new trial.
4. "The motion of the defendant in error to assess damages for delay is denied. While there is no reason for the grant of a new trial, still the verdict is not so manifestly correct as to exclude a bona fide insistence on the part of the plaintiff in error that a new trial should be granted."

DECIDED JANUARY 23, 1917.

Action for damages; from city court of Savannah—Judge Davis Freeman. May 15, 1916.

*Wilson & Rogers,* for plaintiff in error.

*Twiggs & Gazan,* contra.

BLOODWORTH, J. Lloyd Harley, a minor, by his father and next friend, P. L. Harley, brought suit against the Realty Bond and Mortgage Company, alleging, that said company was the owner of a certain house and lot in the city of Savannah; that P. L. Harley rented an upstairs apartment, and after renting discovered that "the premises were in a fearful state of disrepair," that window panes were broken out, and that the railing of the upstairs balcony had several palings or rails missing, so as to leave open spaces two or three feet wide in the banister; that his father notified the defendant of the condition of the premises, and of the railing in particular, and that this notice was given several times, but the company failed and neglected to repair the same; that Lloyd Harley, a child of tender years, went through the space in the window where the pane was missing, out upon the balcony, and fell through the space in the railing to the street below, striking upon his head and thereby depressing the skull and affecting the brain; that the child was knocked unconscious and had to be taken to the hospital, where it remained for two weeks; that after leaving the hospital the said child remained at home in bed for three weeks; that there is a depression in the skull, and said child has been dull and stupid ever since; that said Lloyd Harley was of such tender years as to have been incapable of negligence, and that the injuries to said child were due solely and entirely to the negli-

gence of the defendant company, its agents, servants, and employees. The special acts of negligence alleged were: "(a) In not repairing said house and the windows and balcony thereof by putting in the necessary panes and railings so as to make the said house a safe one for the occupants. (b) In failing to put said house in a condition of good repair when notified by the tenant of the defects therein. (c) In maintaining said house in a dangerous and defective condition, to wit, the panes and glass missing and railings missing from the balcony banister, when the defendant knew, or ought to have known, that such condition created a dangerous place for children." Petitioner sued for $5,000 for physical injuries, for deformity of his head, for mental pain and suffering, for injury to his mental faculties, and the permanent handicap which said weakness will entail. The Realty Bond and Mortgage Company denied all the averments referring to negligence and damage. Upon a trial of the issue the jury returned a verdict for the plaintiff in the sum of $1,000, and defendant made a motion for a new trial on the general grounds and on two additional grounds, one that the verdict was excessive, and the other based upon alleged newly discovered evidence.

1. Did the evidence authorize the verdict for plaintiff? The allegations in the petition, which are paraphrased above, if true, make a good case. Practically every allegation is proven as stated in the petition. The allegata and probata are in unison. This being true, there is ample evidence to support the verdict. "This court is a court for the correction of errors in law and in equity alone. It has no authority to entertain an assignment of error that the verdict is contrary to the evidence, if there is any evidence at all to support the verdict." Bell v. Aiken, 1 Ga. App. 36 (57 S. E. 1001). "There is nothing in the evidence in the record to take the case out of the established rule that the verdict of the jury, approved by the trial judge, is conclusive as to all issues of fact." Atlantic Coast Line R. Co. v. Locklear, 9 Ga. App. 344 (71 S. E. 683).

2. Was the verdict so excessive as to clearly show prejudice or bias on the part of the jurors, and thus require this court to set it aside? There is no proof in the record of prejudice or bias, and nothing therein to indicate it, unless it be in the amount of damages awarded. Before the verdict will be set aside on the ground

that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "exorbitant," "flagrantly outrageous," and "extravagant." "It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush." It must carry its death warrant upon its face. We find in this verdict no such inherent iniquity. The presiding judge, in the order refusing a new trial, said: "There was ample evidence to support the verdict. . . The strongest claim is that concerning the size of the verdict. . . I think the verdict is large, but I can not say that it is so large as to justify me in granting a new trial on that ground."

It is presumed that when a judge refuses to grant a new trial he has exercised the discretion vested in him by law. In addition to this presumption, the above statement of the trial judge expressly shows that in this case he exercised his discretion; and when this is done, unless this discretion has been abused, the order refusing a new trial should be final on this point. The jurors who saw and heard the witnesses fixed the amount of the verdict; it was approved by the presiding judge, "and if the court trying the case does not consider the damages excessive, any other court ought to be cautious in doing so." *Adkins* v. *Williams,* 23 *Ga.* 222 (2). If the verdict in this case does not speak its own doom, the fact that the amount of the verdict may appear large is no reason why it should be set aside. Even though we should consider the verdict in this case "large and generous," "courts will never, in the absence of the most satisfactory evidence that the verdict is erroneous, substitute their impressions for the opinion of the jury." *Lang* v. *Hopkins,* 10 *Ga.* 37 (3). In the case last cited Judge Lumpkin said: "As judges, we are not authorized to substitute our conjectures or apprehensions for the determination of that body on whom the law has devolved the duty of deciding, duly weighing all the circumstances of the case. . . Judges should be very cautious, therefore, how they overthrow verdicts given by twelve men on their oaths, on the ground of excessive damages, upon a matter left so entirely to their discretion, especially when the presiding judge before whom the case is tried, and who is presumed to have been familiar with all the facts, has refused to interfere. For this court to order a new hearing, under such circumstances, it must

be made manifest by the proof that the damages were 'flagrantly outrageous and extravagant.' " This is quoted by Judge Powell in the case of *Holland* v. *Williams, 3 Ga. App.* 636 (60 S. E. 331). "A verdict in one of that class of cases in which the amount of damages is left to the enlightened conscience of the jury is not to be declared by a reviewing court to be excessive, unless it is so large in amount as to justify the court in believing that it could not reasonably have resulted from any other cause than bias or gross mistake on the part of the jury." *Seaboard Air-Line Railway* v. *Miller, 5 Ga. App.* 402 (63 S. E. 299). In discussing the method of proving prejudice or bias, Judge Powell, in the case last cited, said (p. 403) : "The question is, how is this bias or this mistake to be shown? Sometimes it may be shown directly, but this is rarely so. Usually it is a matter of inference; and in that event the solution falls within the rule as to circumstantial evidence,— there must be no reasonable hypothesis other than that the bias or the mistake did exist." Is there "no reasonable hypothesis" other than that this verdict is the result of prejudice or bias? Assuredly there is. The presumption is that the jurors were impartial and understood their case. It is, therefore, a more "reasonable hypothesis" that their finding was based on the evidence considered impartially in connection with the charge. See *Georgia R. Co.* v. *Keating, 99 Ga.* 308 (25 S. E. 669) ; *Atlantic & Birmingham R. Co.* v. *Douglas, 119 Ga.* 658 (46 S. E. 867). "Upon naked questions of fact, where no error by the court in the progress of the trial is complained of, doubt in the appellate court is to be given in favor of verdicts, and not against them." *Brown* v. *Meador, 83 Ga.* 406 (9 S. E. 681).

3. Is there anything in the alleged newly discovered evidence to take it out of the general rule that "ordinarily circumstantial and impeaching evidence is not ground for a new trial?" No. The sole effect of the alleged newly discovered evidence would be to contradict and impeach one of the witnesses for the plaintiff. Civil Code, § 6085 ; *Roy* v. *State, 140 Ga.* 223-224 (78 S. E. 846). Besides, this evidence was as to the location of the father of the child at the time of the accident, as related to the opening in the banister through which the child fell, and the location "where the child must have been lying unconscious after said fall," and based upon an inspection of the premises after the trial. Ordinary diligence

requires that this inspection should have been made prior to the trial. Civil Code, § 6086; *Cadwallader* v. *Fendig,* 137 *Ga.* 140 (72 S. E. 903).

*Judgment affirmed. Broyles, P. J., and Jenkins, J., concur.*