## 57005. CENTRAL OF GEORGIA RAILROAD COMPANY v. NASH.

SMITH, Judge.

Central of Georgia Railroad appeals from the trial court's overruling its motion for new trial, filed after a jury returned a verdict against it in the amount of $300,000. The appeal raises essentially three issues: that the amount of the verdict was excessive and was a product of jury prejudice; that the trial court improperly limited appellant's examination of certain witnesses; and that there was misconduct on part of the jury. We find no error

and affirm the judgment of the trial court.

Nash brought this suit to recover for personal injuries he suffered on February 2, 1976, while performing his duties as an employee of appellant. The injuries occurred when Nash, forty-one years old at the time, fell after grasping a defective grab iron on a railroad car. The grab iron was supposed to have supported Nash's weight, and, instead, it came off in his hand.

The evidence showed that prior to the fall Nash had been a very dependable worker and that since the fall he has been "much less active." Immediately after the fall, Nash's left knee began to swell. Fluid collected in the knee, and Nash had it drained. Nash has had continual medical treatment of the knee from the date of the accident until the date of trial, January 31, 1978. He entered the hospital on two occasions, and doctors performed surgery upon the knee both times, removing the prepatella bursa in the knee during one of the operations. The other operation was exploratory in nature, requiring the drilling of holes in the tibial plateau, and it resulted in a diagnosis of "chrondromalacia, lateral tibial plateau." During the course of his medical treatment Nash has been forced to wear knee pads and knee braces and to utilize crutches. Also, he has had to undergo substantial drug therapy. The fall also injured Nash's right knee; however, almost the entirety of the evidence on damages concerned the injury to the other knee.

Since the time of the fall Nash has endured continual, "excruciating" pain, and his condition is such that he can no longer perform the household chores and other work as he used to. A fellow employee testified that he had several times noticed tears form in Nash's eyes when he put his weight on the left knee. The muscles in the left knee atrophied because of the injury, and the evidence suggested that, at the time of trial, Nash had regained only 80% of his strength in the knee, which now makes a grinding noise when he walks. The evidence also indicated that the accident caused arthritis to develop in the knee and that because of the injury Nash has an increased susceptibility to severe arthritis. Because of the accident, Nash also has a greater chance than the normal

person of having his knee wear out completely, in which event surgical removal of the entire knee joint could result. Nash was absent from work for a period of ten months, and his lost wages amounted to $12,726.58. Medical expenses prior to trial amounted to $2,779.10.

On appellant's motion for new trial, evidence was introduced which showed that just subsequent to the return of the verdict a tearful female juror embraced Nash's attorney and that other female jurors, as well as Nash and his wife, were weeping. Also on the motion for new trial, appellant introduced an affidavit of the jury foreman, which read in part as follows: "The engineer on Mr. Nash's crew the night of the accident, who testified during the trial, was named Crozier. He was testifying in Mr. Nash's behalf and said he was retired on disability, based on having had a heart attack. Mr. Norman [appellant's attorney] in his closing argument had mentioned to the jury that if Mr. Crozier had retired on disability, surely Mr. Nash would not be left out completely in the cold on his retirement, and would be as happy and well off as Mr. Crozier, the engineer who had testified on the stand and who was obviously happy and appeared very well dressed and satisfied with his retirement pay. During the discussion in the jury room one of the jurors said he had overheard some statement from a third person whose name he did not reveal, who said in the presence of this juror that this engineer, Mr. Crozier, may have been retired on disability due to heart attack, but he did not receive any compensation from the railroad. What this juror was saying was that somehow he found out from some third person that the railroad did not pay the disability payments to Mr. Crozier. He then proceeded to tell all of us on the jury what this unknown or unidentified third person told him. We thought until then that it made sense that if the engineer who worked with Mr. Nash was being taken care of on retirement due to disability, that if anything ever happened to Mr. Nash he too would be retired on disability. But after this statement to the jury by the juror who heard it from someone else, the jury tried to look after Mr. Nash for the rest of his life as if he would not keep his job with the railroad, just like the juror said.

"Since the jury did not review the evidence, I suggested we go around the room for comments. I turned to the man on my left side, whose name I do not remember, but who was a retired businessman. He was the first person I called on. He stated he was familiar with this kind of thing, and that the railroad would fire Mr. Nash as soon as this case was over, and that when he lost his job with the railroad no one else would hire him. He said we would therefore have to figure the case on the basis that he would not work any more because he would lose his job and no one else would give him a job."

1. The evidence set out above indicates that Nash has suffered considerable pain during the two years prior to trial, and the presumption can only be that pain and suffering will continue. Furthermore, Nash's ability to work has been limited and will continue to be, and more medical treatment will be required in the future. Viewing the evidence, as we must, to sustain the verdict, we cannot say that the amount of the verdict warrants our interference, particularly since the trial court approved the verdict in overruling appellant's motion for new trial. Contrary to appellant's contention, the evidence introduced on the motion for new trial did not prove any actual bias on part of the jury. "We cannot say that the award of the jury was 'so excessive as to justify the inference of gross mistake or undue bias.' Code § 105-2015. 'Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "exorbitant," "flagrantly outrageous," and "extravagant." "It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush." It must carry its death warrant upon its face.' " *Redwing Carriers v. Knight,* 143 Ga. App. 668, 677 (239 SE2d 686) (1977). The sole measure of damages for pain and suffering is the enlightened conscience of the jury. *Atlanta Transit System v. Robinson,* 134 Ga. App. 170 (1) (213 SE2d 547) (1975). "An excessive or inadequate verdict constitutes a mistake of fact rather than of law. It addresses itself to the discretion of the trial judge who saw the witnesses and heard the testimony. This court is a court for the

correction of errors of law only, and this court's jurisdiction is confined to the question of whether the trial court abused his discretion in overruling the motion for a new trial on this ground. [Cits.] In the present case, where the evidence most favorable to the plaintiff shows painful and permanent injuries with loss of physical function, it cannot be said that the verdict is excessive as a matter of law." *St. Paul Fire &c. Ins. v. Dillingham,* 112 Ga. App. 422, 425 (145 SE2d 624) (1965).

2. Appellant complains that the trial court erred in refusing to allow appellant to examine witnesses at a particular time. However, appellant expressly agreed with the court's handling of the examination, and thus we will not consider the appellate complaint.

3. Appellant contends the affidavit quoted above proves jury misconduct which requires reversal. We cannot agree. Assuming arguendo that the supposed comment relating to witness Crozier, which a juror allegedly overheard, would require a new trial under the law of *Central of Ga. R. Co. v. Hammond,* 109 Ga. 383 (34 SE 594) (1899), *Alabama Great Southern R. v. Brown, 140 Ga. 792 (79 SE 1113) (1913),* and *Watkins v. State,* 237 Ga. 678 (229 SE2d 465) (1976), there was no probative evidence showing a juror overheard any such comment. The foreman's affidavit was submitted to prove that a "third person" had made a prejudicial statement which a juror overheard, and for that purpose it was inadmissible as hearsay. *Duren v. State,* 158 Ga. 735 (1) (1924); Code § 38-301. We thus have no reason to invoke the reasoning of the above cases, cited by appellant. In *Central of Ga. R. Co.,* supra, and *Alabama Great Southern R.,* supra, proper showings were made that during trial jurors had accepted the hospitality of persons connected with one of the litigants. And, in *Watkins,* supra, probative evidence was introduced to show that some of the jurors had, without authorization, visited the scene of the crime.

There was also, however, evidence that a juror made statements concerning matters not in evidence, such as that the railroad would fire Nash and that the railroad was not compensating witness Crozier under a disability program. Those statements might not have been objectionable as hearsay, but they were certainly

inadmissible as tending to impeach the verdict. Code § 110-109. "The rule [of Code § 110-109] has a valid and salutary application in disallowing jurors to impeach their verdicts on the basis of statements made to one another in the jury room and the effect of those statements upon the minds of the individual jurors." *Watkins,* supra, p. 685. " 'The affidavits of jurors may be taken to sustain but not to impeach their verdict.' Code § 110-109. Under this rule of law, it has been repeatedly held that the affidavit of a juror will not be received to show that the jurors in arriving at their verdict acted upon private knowledge or upon matters which were not in evidence." *Alley v. State,* 99 Ga. App. 322, 323 (108 SE2d 282) (1959). See also *Samples v. Greene,* 138 Ga. App. 823, 825 (227 SE2d 456) (1976).

*Judgment affirmed. Quillian, P. J., and Birdsong, J., concur.*

ARGUED JANUARY 15, 1979 — DECIDED APRIL 30, 1979 — REHEARING DENIED MAY 23, 1979 —

*Hull, Towill, Norman, Barrett & Johnson, Robert C. Norman, Neal W. Dickert,* for appellant.

*Cooper, Cooper, Maioriello & Stalnaker, L. E. Maioriello, Billy E. Moore,* for appellee.