70375. SEABOARD SYSTEM RAILROAD, INC. v. TAYLOR.
(338 SE2d 23)

BANKE, Chief Judge.

Betty S. Taylor sued Seaboard System Railroad, Inc., to recover damages for an on-the-job injury to her back allegedly caused by the negligence of a fellow Seaboard employee. The cause of action was predicated on the Federal Employers' Liability Act, 45 USC § 51 et seq. (FELA). A jury returned a verdict in her favor in the amount of $250,000, and Seaboard filed this appeal.

The accident occurred on December 17, 1979, while the plaintiff was working as a "hostler helper" at Seaboard's diesel shop facility in Hamlet, North Carolina. (A hostler is responsible for driving locomotive engines around the rail yard, while his helper assists by riding on the engine and dismounting from time to time to perform such tasks as lining up switches.) Believing that the engine on which she was riding was on a collision course with another engine, the plaintiff jumped a distance estimated by her to be about three feet to the ground, as the engine was traveling 10 to 12 miles per hour. The two engines did not in fact collide but stopped within a few feet of each other.

Although the plaintiff testified that she felt "shook up and nervous" after the incident, she completed her shift and experienced no immediate physical problems. She was later bothered by sore feet, followed, about three weeks after the incident, by what felt like a "catch" in her lower back. She continued to work, however, and did not seek treatment for these symptoms until May of 1980, when she began receiving chiropractic care from a fellow railroad employee. She first consulted a physician with regard to her symptoms in August of 1981, at the request of her attorney. This physician, an orthopedic surgeon, diagnosed her as suffering from "dysfunctional low back pattern and os calcis bursitis." Asked to elaborate, he testified that "[t]he term dysfunctional simply means there is something wrong producing symptoms about the lower back," and that os calcis bursitis referred to "some inflammatory process about the heel." His prognosis was as follows: "I feel, as our initial impression outlined, there is something wrong in the lower back. The patient has evidence of degenerative wear and tear change about the lower region of her lower

back. As she advances in age, this is likely to continue to be troublesome, both in terms of working activity and a normal lifestyle. At the time that I last saw the patient she is still being able to relatively function in terms of her work and lifestyle, so I would expect intermittency of symptoms to be present in the future. How severe I don't really have a way to judge." The doctor acknowledged that the plaintiff's condition had improved over the period of time he had been treating her, and he further acknowledged that his most recent medical report to the railroad, dated February 1983, had described her prognosis as "excellent." He at no time assigned the plaintiff a disability rating or advised her to cease working because of her condition.

The evidence of special damages consisted in its entirety of the plaintiff's testimony to the effect that she had missed a total of 180 days from work because of her back condition and had, as a result, experienced lost wages totaling $14,000. It is undisputed, however, that the plaintiff has continued to be employed by Seaboard at all times since the accident, and she testified that she had no plans to cease working for the company. In fact, it was shown that during the period between the accident and the trial her pay had increased from about $6 per hour to $11 per hour.

In describing her current condition, the plaintiff testified that her back felt "very uncomfortable; it's very hard to sit still . . . It pulls and draws down my right leg." She further testified that she was no longer able to bowl, swim, play ball, or perform such household chores as cutting grass or washing the car.

On appeal, Seaboard's primary contentions are that there was no evidence of any causal connection between the accident and the injury and that, even assuming the existence of such a causal connection, the award of damages was excessive. *Held*:

1. "[T]he test of liability under the F.E.L.A. is whether the employer's negligence 'played any part, even the slightest, in producing the injury or death for which damages are sought.' *Rogers v. Missouri Pacific R.*, 352 U. S. 500, 506 (77 SC 443, 448, 1 LE2d 493) (1957)." *Lane v. Gorman*, 347 F2d 332, 335 (10th Cir. 1965). The jury's verdict in such cases will be reversed "[o]nly when there is a complete absence of probative facts to support the conclusion reached . . ." *Lavender v. Kurn*, 327 U. S. 645, 653 (66 SC 740, 90 LE2d 916) (1946).

The plaintiff testified that she had not experienced any back problems prior to the incident on which this suit is based; and while her medical expert conceded that there were any number of possible causes for the type of condition from which she suffered (such as, for example, heavy sneezing or coughing, stepping off a curb, or being manipulated by a chiropractor), he further testified that in his opinion "the trauma that she describes [as] having occurred at the time of

the incident . . . was a causal traumatic event precipitating . . ." the condition. Under the aforestated legal principles, this evidence, though weak, was sufficient to support the jury's conclusion that the plaintiff's condition was attributable to the accident.

2. Questions concerning the proper measure of damages in FELA cases, like questions of liability, are to be settled according to general principles of law as administered in the federal courts. *Chesapeake & Ohio R. Co. v. Kelly*, 241 U. S. 485, 491 (36 SC 630, 60 LE 1117) (1916); *Norfolk & Western R. Co. v. Liepelt*, 444 U. S. 490, 493 (100 SC 755, 62 LE2d 689) (1980). It has been held that the damages recoverable under the FELA on account of a railroad employee suffering injury or death on the job are compensatory only and that punitive damages are not recoverable. See *Kozar v. Chesapeake & Ohio R. Co.*, 449 F2d 1238 (2) (6th Cir. 1971). However, the jury's determination of the amount of damages to be awarded is otherwise inviolate, "absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial . . . (Cits.)" *Lane v. Gorman*, supra, 347 F2d at 335. This standard of review is consistent with that which obtains under Georgia law, which has been stated as follows: "Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear 'exhorbitant,' 'flagrantly outrageous,' and 'extravagant.' 'It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush.' It must carry its death warrant upon its face." *Realty Bond &c. Co. v. Harley*, 19 Ga. App. 186, 187 (91 SE 254) (1917). *Jones v. Spindel*, 128 Ga. App. 88, 92 (196 SE2d 22) (1973); *Redwing Carriers v. Knight*, 143 Ga. App. 668, 677 (239 SE2d 686) (1977). See generally OCGA § 51-12-12.

After careful consideration, we are convinced the award of damages in the present case is so excessive as to fall into this category. The plaintiff did not assert that she suffered from constant or severe pain as a result of her injury but testified merely that her back felt "very uncomfortable" at times. Her own physician, while testifying that he expected her condition to be intermittently "troublesome" for her, did not indicate that he expected her symptoms to worsen but instead testified that he had no way of knowing how severe her symptoms would be in the future. He further testified that her condition had improved during the period of time she had been in his care; and in the most recent medical report submitted to the railroad by his office, a report which he affirmed as his own on the witness stand, her prognosis had been described as excellent. The strongest evidence supporting the award was the plaintiff's testimony that she could no

longer perform such activities as bowling or cutting grass. However, it is quite clear that she continues to be able to travel, to drive an automobile, and to perform her job satisfactorily; and it is noteworthy under these circumstances that her physician has never assigned her a disability rating, nor has he ever ordered her to restrict her activities in any way. On the basis of all the circumstances, we are unable to discern any reasonable basis for an award of compensatory damages in the amount of $250,000, and we accordingly conclude that at least a portion of the verdict was punitive in nature. The judgment is therefore reversed, and the case is remanded for a new trial. Accord *Grunenthal v. Long Island R. Co.*, 388 F2d 480, 483-484 (2nd Cir. 1968); *Bullard v. Central Vt. R.*, 565 F2d 193, 197-198 (1st Cir. 1977).

The cases cited by the plaintiff do not require a contrary holding. In *Central of Ga. R. Co. v. Nash*, 150 Ga. App. 68 (256 SE2d 619) (1979), an award of $300,000 was upheld based on evidence that the plaintiff had required continual medical treatment for his injured knee, including surgery on two occasions; that he had experienced continual, "excruciating" pain; that he had been forced to wear knee pads and braces, to use crutches, and to undergo substantial drug therapy; and that he faced a greater than normal chance that the knee would eventually wear out completely, requiring surgical removal of the joint. In *Seaboard Coast Line R. v. Towns*, 156 Ga. App. 24 (274 SE2d 74) (1980), an award of $220,000 was upheld on the basis of evidence that the plaintiff had experienced continual pain since the accident, including pain and numbness in the arms and legs, and periodic loss of equilibrium. Such injuries cannot reasonably be equated with a back condition which the plaintiff's own physician describes merely as intermittently troublesome and which he declines to characterize as in any way disabling.

3. The plaintiff's testimony regarding the amount of wages she had lost as the result of the injury was sufficient to enable the jurors to calculate the amount of this alleged loss with reasonable certainty. Consequently, Seaboard's motions for directed verdict and for judgment notwithstanding the verdict with regard to this element of her claim were properly denied. See generally *Douglas v. Rinker*, 134 Ga. App. 949, 950 (216 SE2d 629) (1975).

4. Although the court specifically charged the jury that any damages awarded by them would not be subject to income taxes, Seaboard contends that the court erred in refusing to further instruct them that they "should not consider such taxes in fixing the amount of [the] award." We find this contention to be without merit. The court's charge adequately conveyed the principle at issue, i.e., that the award should not be increased to compensate for the possibility that it would be subject to income taxation. See generally *Norfolk & Western R. Co. v. Liepelt*, 444 U. S. 490, supra.

5. "When a motion for mistrial is made and the trial court instructs the jury not to consider the alleged error upon which the motion is based, and counsel neither requests further instruction nor renews the motion for mistrial, the assignment of error based on the denial of the motion for a mistrial is without merit." *Kendrick v. Kendrick*, 218 Ga. 460 (4) (128 SE2d 496) (1962); *Cherry v. State*, 220 Ga. 695 (5), 697 (141 SE2d 412) (1965).

*Judgment reversed and case remanded. McMurray, P. J., Birdsong, P. J., Sognier, Pope, and Beasley, JJ., concur. Deen, P. J., Carley, and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

Because I am unable to agree with the majority's conclusion that the jury's award in this case is excessive as a matter of law, I must respectfully dissent from the judgment of reversal.

"When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive. [Cits.] This court does not have the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses, including the plaintiff on the stand, has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means. [Cits.]" *Melton v. Bow*, 145 Ga. App. 272 (4) (243 SE2d 590) (1978). The majority correctly notes that in a case such as this one, where there is no direct proof of prejudice or bias, the verdict "must carry its death warrant upon its face." *Realty Bond &c. Co. v. Harley*, 19 Ga. App. 186, 188 (91 SE 254) (1917).

I must part company with the majority, however, in its analysis of the evidence supporting the verdict. "The evidence must be construed most strongly toward upholding a verdict which has the approval of the trial judge. 'After a verdict, the evidence is construed in its light most favorable to the prevailing party, for every presumption and inference is in favor of the verdict.' [Cits.]" *Johnson v. Cook*, 123 Ga. App. 302, 304 (180 SE2d 591) (1971). Applying that principle to the present case, it may be seen that the verdict here does not, in fact, carry its death warrant on its face.

While, as the majority points out, appellee did not claim to suffer constant pain as a result of her injury, there was evidence that she is unable to stand erect in the morning until she moves around and that the discomfort in her back is triggered not only by her work but by

virtually all activity. Appellee's physician testified to improvement in her condition, but also testified that there is a degenerative condition in her back and that it will continue to be troublesome as she advances in age. In addition, the record contains testimony that appellee can no longer comfortably engage in such activities as bowling, swimming, playing softball, cutting grass, washing her car, washing her hair at the sink, and pulling on her pantyhose. The majority points out that appellee continues to be able to travel and drive a car, but the record shows that the continued sitting which is a part of automobile travel causes the discomfort in her back to increase, requiring stops for her to walk around. Although appellee has not been crippled or rendered unable to work, the evidence clearly authorized the jury to find that the injury to appellee's back has deprived her of a large measure of comfort and will continue to do so, possibly in a more severe fashion, for the rest of her life, another 36 years according to the life expectancy tables placed into evidence.

Reviewing, as we must, a cold record, not having had the jury's opportunity to hear appellee's testimony and observe her as she testified, we are in no position to second-guess the "enlightened conscience of the jury" (*Central of Ga. R. Co. v. Nash*, 150 Ga. App. 68 (256 SE2d 619) (1979)), which did have that opportunity. Here, as in *St. Paul Fire &c. Ins. Co. v. Dillingham*, 112 Ga. App. 422, 425 (145 SE2d 624) (1965), the size of the verdict was complained of in a motion for new trial; the holding in that case is pertinent here: "An excessive or inadequate verdict constitutes a mistake of fact rather than of law. It addresses itself to the discretion of the trial judge who saw the witnesses and heard the testimony. This court is a court for the correction of errors of law only, and this court's jurisdiction is confined to the question of whether the trial court abused [its] discretion in overruling the motion for a new trial on this ground. [Cits.] In the present case, where the evidence most favorable to the plaintiff shows painful and permanent injuries . . ., it cannot be said that the verdict is excessive as a matter of law."

Since I agree with the other holdings of the majority in this case, I would affirm the judgment of the trial court.

I am authorized to state that Presiding Judge Deen and Judge Carley join in this dissent.

DECIDED OCTOBER 23, 1985 —
REHEARING DENIED NOVEMBER 15, 1985 —

*Jack H. Senterfitt, Richard T. Fulton*, for appellant.
*Kerry R. McDonald, Jack T. Brinkley, Jr., J. Anderson Harp, J.*

*Sherrod Taylor*, for appellee.