44177. SOUTHERN RAILWAY COMPANY v. LAWSON et al.
(353 SE2d 491)

GREGORY, Justice.

A jury in Stephens Superior Court found a release agreement executed by Southern Railway Company (Southern) and Ray and Mattie Lawson was invalid. Southern appeals the judgment. We affirm.

On October 12, 1980, the Lawsons' son was struck and killed by a Southern train. In the period following the son's death, the Lawsons were extremely distraught. Both were taking valium prescribed by a doctor.

On October 15, 1980, the Lawsons entered into a contingency fee contract with attorney Dan Pressley, who sent a letter to Southern stating he was representing them. Soon after, a Toccoa funeral director contacted the Lawsons about a meeting with a Southern claims agent. Mr. Lawson was told the agent could not meet with the couple directly if they were represented by counsel. The Lawsons discharged Pressley and obtained a letter from the attorney acknowledging the termination of representation.

On October 20, 1980, the Lawsons met with a Southern agent at the funeral home. The couple accepted $7,500 and signed a release. The Lawsons, both of whom could read, did not read the agreement. They later stated they had believed the $7,500 was "sympathy money" from the railroad and did not understand they were releasing Southern from liability in the death of their son. By January 1981, all of the $7,500 had been spent by the Lawsons.

In February 1981, Mrs. Lawson entered a contingency fee employment contract with attorney James E. Cornwell, Jr. to represent her in connection with her son's death. The railroad sent a copy of

the release to Cornwell. His employment with Mrs. Lawson was terminated in July 1981.

Soon after, the Lawsons entered into another contingency fee contract with attorney Christopher Duncan. On October 5, 1982, attorney Duncan sent a letter to Southern stating: "Mr. and Mrs. Lawson are prepared to immediately tender to Southern Railway through this office the sum of $7,500 plus interest and rescind the release contract executed on or about October 20, 1980. Please compute the proper amount and inform this office so that said sum may be forwarded to you." Duncan wrote Southern again on October 9, 1982 stating the Lawsons were rescinding and cancelling the release agreement, and that they had paid $7,500 into the Stephens Superior Court registry as tender. On October 11, 1982, the Lawsons filed a wrongful death suit in Stephens County.

On October 18, 1982, counsel for Southern wrote the Lawsons' attorney a letter stating: "The rescission and cancellation by your clients of the release agreement executed by them with Southern Railway Company is noted and rejected. The release agreement was fully understood, was fair, and the consideration for it was under the circumstances more than sufficient."

The $7,500 remained in the court registry until October 1983 when the suit was voluntarily dismissed by the Lawsons and the money was withdrawn. The Lawsons filed the instant action in Fulton County in December 1983, but did not place any money into the court registry. The suit was later transferred to Stephens County.

The case was bifurcated to consider the issue of the validity of the release before reaching the railroad's alleged liability in the death of the Lawsons' son. The release issue was submitted to a jury, which returned a general verdict finding the release invalid. The trial court entered judgment declaring the release void and unenforceable and ordering the Lawsons to pay $7,500 plus interest into the court registry as restitution to Southern.

1. Southern contends the trial court erred in denying its motion for a directed verdict.

(a) Southern argues no jury question remained following the Lawsons' presentation as to application of OCGA § 23-2-2, which provides: "Great inadequacy of consideration, joined with great disparity of mental abilities in contracting a bargain, may justify equity in setting aside a sale or contract."

OCGA § 9-11-50 (a) provides in part that "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict.

The standard used to review the grant or denial of a directed verdict is the "any evidence" test. *Skelton v. Skelton,* 251 Ga. 631 (4) (308 SE2d 838) (1983).

Southern argues there was no evidence presented to show a disparate mental ability between anyone representing the railroad and the Lawsons at the time of the contract. However, the Lawsons showed they were in a highly emotional state following the death of the son, and that treatment for their stress included valium. Furthermore, a psychologist who tested the Lawsons found their I. Q. levels to be in the "mentally defective" range. The railroad agent involved, on the other hand, was college educated and had some 20 years experience in claims investigation and settlement.

Reviewing the denial of the motion on this ground under the "any evidence" standard, we find the trial court did not err.

(b) Southern also argues a verdict should have been directed because the Lawsons made no legally sufficient tender of restitution of the $7,500 to the railroad, and that the attempted tender was untimely.

"[T]ender of the amount due is waived when the party entitled to payment, by declaration or conduct, . . . proclaims that, if tender of the amount due is made, an acceptance of it will be refused." *Hefner v. Hall,* 223 Ga. 148, 150-51 (154 SE2d 197) (1967). See also *Smith v. Standard Oil Co.,* 226 Ga. 339 (1) (175 SE2d 14) (1970); *B-X Corp. v. Jeter,* 210 Ga. 250 (2) (78 SE2d 790) (1953). "The law does not require a useless act." *Tendler v. Thompson,* 256 Ga. 633 (352 SE2d 388) (1987).

Southern, in its letter of October 18, 1982 to the Lawsons' attorney, clearly indicated it considered the release a valid agreement and would not agree to rescission or cancellation. This declaration together with Southern's utter disregard of the Lawsons' efforts to make tender under the circumstances made it plain enough any proper tender would be refused.

(c) Finally, Southern contends the trial court erred in denying its motion for directed verdict based on grounds that evidence of voluntary intoxication alone, if unknown to the opposite party in an agreement, is insufficient as a matter of law to invalidate a contract.

The argument is based on OCGA § 13-2-25, which provides: "A contract made by an intoxicated person is not void, though the intoxication is brought about by the other party, but is merely voidable at the election of the intoxicated person and may be ratified by him either expressly or by conduct inconsistent with its rescission." Southern claims there is no evidence the railroad agent knew the Lawsons were under the influence of valium when the release was executed, and thus the statute is not applicable to this case.

The Lawsons did not contend the release was voidable at their

election because of intoxication. Thus it was not error to deny the motion.

2. Southern also contends the trial court erred in applying the attorney-client privilege to restrict examination of attorney Cornwell and examination of his file on Mrs. Lawson.

Attorneys Pressley and Duncan testified on behalf of the Lawsons as to the Lawsons' mental condition during the representations. Also, the attorneys were questioned about factual matters concerning their employment and representation of the Lawsons.

The parties were allowed to question attorney Cornwell on Mrs. Lawson's mental state and actions taken on her behalf. However, Southern contends it should have been allowed to further question Cornwell on discussions he had with Mrs. Lawson about her understanding of the legal ramifications of the release. Southern wanted Cornwell's file on Mrs. Lawson opened. Southern contends that by calling attorneys Pressley and Duncan to testify on matters of importance in the Lawsons' case, the attorney-client privilege was waived as to Mrs. Lawson's dealings with Cornwell.

The fact of an attorney's employment is properly admitted into evidence; and testimony in regard to the mental capacity of a client, based on his observations of his clients in the conferences he had with the client are not privileged. *Smith v. Smith*, 222 Ga. 694 (5) (152 SE2d 560) (1966). The areas explored in questioning of Pressley and Duncan did not involve privileged matters. Since no privileged material was introduced into evidence by the Lawsons, we are unpersuaded by Southern's argument that the attorney client privilege was waived by the Lawsons.

3. Southern contends the trial court erred in not striking certain portions of the deposition testimony of psychologist Dr. Thomas E. Butcher.

Dr. Butcher met with the Lawsons on October 12, 1981 to conduct psychological evaluation and testing concerning their mental competency. According to Dr. Butcher, he interviewed Ray and Mattie Lawson and gave them a battery of intelligence tests to determine their mental reasoning capacity.

In a deposition, which was introduced into evidence at trial, Dr. Butcher stated several times that the Lawsons were suffering from great pain, grief and stress when he met with them approximately one year after the death of their son. Southern contends the testimony was based on comments made to the psychologist by the Lawsons and was inadmissible hearsay.

However, OCGA § 24-3-4 provides: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof

insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence." We thus find the statements made to Dr. Butcher during his evaluation are exceptions to the hearsay rule.

Southern also contends Dr. Butcher was unable to articulate a basis for opinions given in the deposition, and thus were speculative. However, a reading of the record reveals the psychologist's testimony was based on his interviews with the Lawsons and their conduct during the administration of various psychological tests conducted by Dr. Butcher.

4. The trial court allowed the employment contracts between the Lawsons and their three attorneys into evidence. However, Southern contends the trial court erred in deleting the contingency fee portions from each contract. Southern argues the fee arrangement bears directly on the issue of the plaintiff's capacity to understand complicated contracts.

The most acceptable test for relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. McCormick, Evidence 2d, p. 437 (1972). See also OCGA § 24-2-1. Using this test, we agree with Southern that the contingency fee portion of the contracts, as well as the entire contracts, was relevant and should not have been deleted by the trial court.

However, OCGA § 9-11-61 provides: "No error in either the admission or exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." After deleting the fee arangements much of the contracts remained with which to test the mental ability of the Lawsons. We find no harmful error inconsistent with substantial justice in the trial court's action.

5. Southern contends the trial court erred in refusing to grant a mistrial based on Ray Lawson's behavior while he testified. Southern contends he was unresponsive, sobbed constantly and made direct emotional speeches to the jury.

OCGA § 15-1-13 provides every court with the power to control the activities and processes in its cases. Trial courts are invested with wide discretion in the management of the business before them, and this discretion will not be interfered with on appeal unless manifestly abused. *Atlanta Newspapers, Inc. v. Grimes*, 216 Ga. 74, 79 (114 SE2d 421) (1960). The trial court also has broad discretion in passing on motions for mistrial, and its ruling will not be disturbed by the appellate court unless it appears there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the

right of fair trial. *Parsons v. Harrison*, 133 Ga. App. 280, 283 (211 SE2d 128) (1974).

The record indicates the trial court was monitoring Mr. Lawson's testimony and instructed him on several occasions to be more responsive. We find no manifest abuse of discretion by the trial court in denying the motion for mistrial.

*Judgment affirmed. All the Justices concur, except Marshall, C. J., and Hunt, J., who concur in the judgment only.*

DECIDED MARCH 12, 1987.

*Greene, Buckley, DeRieux & Jones, Burt DeRieux, Eileen M. Crowley, Emory F. Robinson,* for appellant.

*Lanham & McGehee, William C. Lanham, Clark H. McGehee,* for appellees.