A89A0318. SOUTHERN RAILWAY COMPANY
v. MONTGOMERY.
(384 SE2d 907)

MCMURRAY, Presiding Judge.

This action against defendant Southern Railway Company was filed by plaintiff Montgomery pursuant to the Federal Employers' Liability Act, 45 USCA 51 et seq. Plaintiff sought damages for injuries he sustained while working for defendant. The alleged cause of plaintiff's injuries was the negligence of defendant in failing to use reasonable care to provide plaintiff with a reasonably safe place to work so that plaintiff's back was injured when he was "trying to throw a difficult switch." (The switch involved in the case sub judice is manually operated and controls a railway intersection.)

Upon the trial of the case the jury returned a verdict awarding plaintiff compensatory damages of $277,000 and judgment was entered in this amount. Defendant's motion for judgment notwithstand-

ing the verdict or in the alternative for new trial was denied and defendant appeals. *Held*:

1. Under the Federal Employers' Liability Act, supra, the defendant would be liable to plaintiff for any injury suffered by plaintiff as a result of the defendant's negligence. *Brooks v. Southern R. Co.*, 178 Ga. App. 361, 362 (343 SE2d 143). "An employer has a non-delegable duty to exercise reasonable care to provide employees with a safe place to work, *Shenker v. Baltimore & Ohio R. Co.*, 374 U. S. 1 (83 SC 1667, 10 LE2d 709) (1962); *Atlantic Coast Line R. Co. v. Thompson*, 213 Ga. 70 (97 SE2d 135) (1957). . . ." *Brooks v. Southern R. Co.*, 178 Ga. App. 361, 362, supra.

Defendant enumerates as error the denial of its motion for directed verdict and of its motion for judgment notwithstanding the verdict. The issue presented is whether there is any evidence authorizing the jury's verdict. *Southern R. Co. v. Lawson*, 256 Ga. 798, 799 (1), 800 (353 SE2d 491); *Findley v. McDaniel*, 158 Ga. App. 445, 446, 447 (280 SE2d 858). Defendant argues that there is no evidence of negligence on its part.

Plaintiff worked for the defendant railroad as a machine operator and had been assigned the broom operator's job with a tie and surfacing gang. The broom operator's job entailed sweeping the railroad track and cleaning switches. The broom is a machine which moves ballast (rock) out between the ties and smoothes it out. In order to clean a switch, the switch is first swept with the brooms and then rock is cleaned from between the rails and beneath the crossbars by hand. Cleaning a switch takes from 30 minutes to an hour. The presence of ballast beneath the crossbar would render the switch unsafe to throw.

On May 26, 1983, plaintiff was instructed to skip the switch at issue and not clean it because there was not time that day. That evening the machines of the tie and surfacing gang were placed on the railroad siding controlled by the switch at issue, however, access was obtained at the other end of the siding through a different switch. On the morning of May 27, 1983, when work resumed, plaintiff was instructed to throw the switch at issue in order to permit some of the tie and surfacing gang machines to exit the siding at that end. These instructions were given by the same supervisor who had the previous day instructed plaintiff to skip cleaning the switch. Plaintiff was instructed (along with another workman) to clear the switch after he had thrown it. As plaintiff approached the switch he noticed that there was rock under the crossbars. While attempting to throw the switch it suddenly stopped and plaintiff immediately felt a severe pain in his back. No fault was found in the mechanism of the switch. At the time of his injury plaintiff was recently back at work with defendant following having been laid off for a period and had started

the broom operator's job during the month prior to his injury. During the time plaintiff had worked as a broom operator, he had thrown switches 10 or 12 times, but had never thrown a switch that had not been cleaned. Plaintiff understood that a switch with rock in it would be harder to throw but testified that he did not believe throwing the switch in question would hurt his back.

Defendant argues that plaintiff's injury was not foreseeable, "[w]hether the negligence of the original tortfeasor is the proximate cause of a subsequent injury is determined by asking whether the subsequent injury was a reasonably foreseeable consequence of the original tortious act." *DeKalb County Hosp. Auth. v. Davis*, 250 Ga. 46 (295 SE2d 840). "Upon the principle that persons are responsible for the usual and natural results of their acts, one may be liable for an injury resulting from his negligence although he could not reasonably have anticipated the particular injury inflicted, or that the particular person would be injured. *Mitchell v. J. S. Schofield's Sons Co.*, 16 Ga. App. 686 (85 SE 978)." *Stuart v. Berry*, 107 Ga. App. 531, 537 (130 SE2d 838).

Plaintiff contends that the supervisor's instructing plaintiff to throw a switch which had not been cleaned constituted negligence. Defendant argues that since plaintiff saw the rock prior to throwing the switch, the jury, in order to find defendant negligent, would have had to conclude that defendant knew or should have known that plaintiff would fail to exercise care for his own safety. In the case sub judice, the evidence authorized just such a conclusion. While there was evidence that plaintiff should have cleared the switch before attempting to throw it, there was also evidence that there were circumstances under which plaintiff would be expected to throw the switch without first cleaning it and that plaintiff was injured under such circumstances. We find that the jury's finding of negligence and probable cause was authorized by the evidence. The trial court did not err in denying defendant's motions for directed verdict and for judgment notwithstanding the verdict.

2. Via an economist, plaintiff presented expert opinion testimony regarding his loss of future earnings. The expert's opinion was given in response to a hypothetical question to which defendant objected on the grounds that a proper foundation had not been laid. Specifically, defendant's objection was that the question elicited an opinion predicated on the unproven assumption that plaintiff would be unable to work in the future.

A mere review of the hypothetical question at issue will show that defendant's objection was without merit. The hypothetical question only assumes that plaintiff was unemployed at the time of trial. Testimony as to that fact had been presented in evidence. There was no suggestion in the hypothetical question that plaintiff is unable to

work in the future. The hypothetical question was not improper for the reason stated by defendant. *Stoneridge Properties, Inc. v. Kuper*, 178 Ga. App. 409, 413 (2) (343 SE2d 424).

An assumption that plaintiff would remain unemployed was introduced by the economist in his answer to the hypothetical question. However, defendant made no objection to the answer. An objection to the answer, if made, would have been meritless since the assumption of plaintiff's continued unemployment while somewhat speculative was not without some foundation in the evidence. To the extent that the economist's opinion was based on insufficient facts, the weight and not the admissibility of the expert testimony was affected. Defendant was free to explore on cross-examination the implication of plaintiff's ability to return to work and did so, submitting various hypotheses and eliciting testimony concerning the effect of those hypotheses on the economist's estimate of plaintiff's loss of future earnings. It remained for the jury what weight to give the expert opinion. *Woods v. Andersen*, 145 Ga. App. 492, 494 (4) (243 SE2d 748).

3. Finally, defendant contends that the amount of the verdict and judgment awarded plaintiff is excessive. Defendant argues that the award is so excessive as to indicate a punitive intent.

"Questions concerning the proper measure of damages in FELA cases, like questions of liability, are to be settled according to general principles of law as administered in the federal courts. *Chesapeake & Ohio R. Co. v. Kelly*, 241 U. S. 485, 491 (36 SC 630, 60 LE 1117) (1916); *Norfolk & Western R. Co. v. Liepelt*, 444 U. S. 490, 493 (100 SC 755, 62 LE2d 689) (1980). It has been held that the damages recoverable under the FELA on account of a railroad employee suffering injury or death on the job are compensatory only and that punitive damages are not recoverable. See *Kozar v. Chesapeake & Ohio R. Co.*, 449 F2d 1238 (2) (6th Cir. 1971). However, the jury's determination of the amount of damages to be awarded is otherwise inviolate, 'absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial . . . (Cits.)' *Lane v. Gorman*, supra, 347 F2d at 335. This standard of review is consistent with that which obtains under Georgia law, which has been stated as follows: 'Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "exhorbitant," "flagrantly outrageous," and "extravagant." "It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush." It must carry its death warrant upon its face.' *Realty Bond &c. Co. v. Harley*, 19 Ga. App. 186, 187 (91 SE 254) (1917); *Jones v. Spindel*, 128 Ga. App. 88, 92 (196 SE2d 22) (1973); *Redwing Carriers v. Knight*, 143

Ga. App. 668, 677 (239 SE2d 686) (1977). See generally OCGA § 51-12-12." *Seaboard System R. v. Taylor*, 176 Ga. App. 847, 849 (2) (338 SE2d 23).

After a review of the evidence in the case sub judice, we do find that the award of $277,000 to plaintiff was not excessive. The evidence shows that plaintiff underwent surgery for removal of a herniated disc, suffered a 15 percent permanent disability, and was permanently restricted to light duty work. Plaintiff had not had previous problems with his back, but after his injury was troubled with chronic pain. Plaintiff testified: "My back aches all the time. I have a solid ache in my back constantly, 24 hours a day, I have an ache there. . ." "The sole measure of damages for pain and suffering is the enlightened conscience of the jury. *Atlanta Transit System v. Robinson*, 134 Ga. App. 170 (1) (213 SE2d 547) (1975)." *Central of Ga. R. Co. v. Nash*, 150 Ga. App. 68, 71 (1) (256 SE2d 619). Plaintiff also testified as to the curtailment of activities such as hunting, fishing, riding horses, and playing with his children and grandchildren. Additionally, plaintiff presented evidence regarding his loss of wages due to his injury and his anticipated loss in the future. We find that the verdict at issue was authorized by the evidence and was not excessive as a matter of law. *Seaboard System R. v. Taylor*, 176 Ga. App. 847, 849 (2), supra; *St. Paul Fire &c. Ins. Co. v. Dillingham*, 112 Ga. App. 422, 425 (145 SE2d 624).

*Judgment affirmed. Carley, C. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment but have some reservations about Division 3. The evidence was that although there was a 15 percent permanent disability, only 10 percent was attributable to this injury and 5 percent of the impairment was due to his preexisting degenerative disc disease which was unrelated to the railroad incident. As to future employment and curtailment of activities, subsequent to the injury, plaintiff was temporarily completely disabled by an unconnected heart attack and precluded from gainful employment for more than a year.

Compare *CSX Transp. v. Darling*, 189 Ga. App. 719 (377 SE2d 217) (1988).

DECIDED JULY 13, 1989.

*Neely & Player, Edgar A. Neely III, Richard B. North, Jr.*, for appellant.

*Kerry R. McDonald*, for appellee.